STATE of Texas,

v.

Jesse Joe PATRICK, Appellee.

State of Texas ex. rel.
Bill Hill, Relator,

v.

Honorable Karen Greene, Judge,
282nd District Court.

Nos. 74,191, 74,227.

Court of Criminal Appeals of Texas.

Sept. 11, 2002.

## OPINION

KELLER, P.J. announced the judgment of the Court and delivered an opinion in which WOMACK, KEASLER, and HERVEY JJ., joined.

Today we are confronted with the question of whether a trial court has the authority to order DNA testing even though the applicant has failed to meet the requirements of the DNA testing statute (Chapter 64).[1]

### A. Background

Patrick (hereinafter referred to as "applicant") was convicted of capital murder and sentenced to death. We affirmed his conviction on direct appeal and denied relief on his application for writ of habeas corpus. Applicant subsequently applied under Chapter 64 for DNA testing of spermatozoa samples. These samples were in the possession of the District Attorney's office.[2] The trial court conducted a hearing on the motion on August 31, 2001 and issued its order on September 21, 2001. In its order, the trial court found that "the defendant has failed to establish by a preponderance of the evidence that there exists a reasonable probability that the defendant would not have been prosecuted or convicted if exculpatory results would have been obtained through DNA testing of the spermatozoa samples." As a result, the trial court stated in its order that "The Court therefore denies the defendant's request for DNA testing of the spermatozoa samples at State expense under Chapter 64 of the Code of Criminal Procedure." Nevertheless, because applicant represented that he was willing to pay for the testing, the trial court ordered testing at applicant's expense. Although there is overwhelming evidence that applicant mur-

Keith S. Hampton, Austin, for Appellant.

Kim Schaefer, Asst. DA, Dallas, Matthew Paul, State's Attorney, Austin, for State.

---

1. All references to chapters or articles are to the Code of Criminal Procedure unless otherwise indicated.

2. The boxed samples were admitted into evidence and, presumably, are now under the control of the district clerk.

dered Mrs. Redd, Applicant wants the testing, he argues, because he cannot remember the murder. Applicant's attorney concedes that, "We all know what the results are likely to be," and that the test, "is unlikely to help [his] client."

The State appealed the trial court's order and also filed an application for writ of mandamus. We granted leave to file the application for writ of mandamus and issued an order staying the trial court's order for DNA testing.

### B. Appeal

 Although the State argues that permitting an appeal of the trial court's DNA order is consistent with the spirit of Article 44.01, the State does not claim that Article 44.01 specifically authorizes its appeal, and we find nothing in that article authorizing an appeal here. The State does contend that its appeal is authorized by Article 64.05, which provides:

> An appeal of a finding under Article 64.03 or 64.04 is to a court of appeals, except that if the convicted person was convicted in a capital case, the appeal of the finding is a direct appeal to the court of criminal appeals.

The State contends that this language places no limitation on who may take an appeal, and due to its general wording, authorizes an appeal by either the inmate or the State. The State then concludes that Article 64.05's general authorization to appeal extends to the present case.

We disagree. Article 64.05 cannot authorize an appeal here because the State is not appealing the finding that the court made under Chapter 64. The trial court

expressly found that Chapter 64's requirements were *not* met and *denied* the application for testing pursuant to that statute. The State does not complain of that finding. And the trial court's order granting DNA testing does not purport to be based upon Chapter 64. Consequently, there is no basis for an appeal by the State. And although applicant has argued that the findings are wrong, and he could have appealed from them, he has not done so. The State's appeal is dismissed.

### C. Writ of Mandamus

 To be entitled to a writ of mandamus, the State must demonstrate that: (1) there is no other adequate legal remedy, and (2) there is a clear and indisputable right to the relief sought.[3] Because the State cannot appeal the trial court's order in this case, the State has no remedy other than a writ of mandamus. Thus, we move to the second question, whether the State has a clear and indisputable right to the relief sought.

 When a conviction has been affirmed on appeal and the mandate has issued, general jurisdiction is not restored in the trial court.[4] The trial court has special or limited jurisdiction to ensure that a higher court's mandate is carried out[5] and to perform other functions specified by statute, such as finding facts in a habeas corpus setting,[6] or as in this case, determining entitlement to DNA testing. The trial court did not cite a statutory provision, or any other source of authority, that would authorize the order for DNA testing, and we are unaware of any source of authority for this action. As we have

---

**3.** See *State ex. rel. Hill v. Court of Appeals for the Fifth Dist.,* 34 S.W.3d 924, 927 (Tex.Crim. App.2001).

**4.** *Yarbrough v. State,* 703 S.W.2d 645, 649 (Tex.Crim.App.1985).

**5.** *Id.*

**6.** See Articles 11.07 & 11.071.

previously observed, the order was based neither upon Chapter 64 nor upon a pending application for writ of habeas corpus.[7] The trial court was therefore clearly and indisputably without jurisdiction to issue the order in question.

■ The dissent contends that the trial court's action was not so clearly wrong as to be beyond dispute. In support of this contention, the dissent cites the maxim "whatever is not forbidden is permitted."[8] Whatever validity that maxim may have as a general matter, it does not apply here. Without jurisdiction, the trial court has no power to act. Consequently, a source of jurisdiction must be found to authorize the trial court's orders. The dissent contends that, "once post-conviction jurisdiction attaches, the trial court may perform acts which, although not explicitly authorized, are implicit to the jurisdictional purpose."[9] But, as the dissent concedes, these "implicitly authorized" acts must be in furtherance of some other action for which there is an explicit grant of jurisdiction.[10] The dissent finds Chapter 64 to be an explicit grant of jurisdiction.[11] But the dissent does not explain how the trial court's order in this case furthers its Chapter 64 jurisdiction. If, for example, the requirements under Chapter 64 for testing had been

met, and testing was conducted, the trial court might legitimately order the appearance of witnesses involved in the testing process, if such appearance was deemed necessary for the trial court to make findings under Article 64.04. But here, Chapter 64's requirements were *not* met, and so testing was not authorized under the statute. The dissent does not, and indeed cannot, explain how a trial court's jurisdiction under the DNA testing statute is furthered by testing that is not authorized under that statute.

The dissent contends that an unresolved question exists as to whether the trial court has "continuing jurisdiction" after it determines that the applicant has failed to meet Chapter 64's requirements.[12] But the question posed is not one of "continuing jurisdiction" but whether the statute authorizes the trial court to issue an order not authorized by the statute. The answer is obvious from the question. The Legislature could have given the trial court discretionary authority under Chapter 64 to order DNA testing when the conditions for compelling DNA testing were absent. The Legislature did not do so.[13]

■ The dissent further contends that the Court said in *Awadelkariem v.*

---

7. At least three judges on this Court have indicated, before the advent of Chapter 64, that there is "no other available procedure" than an application for writ of habeas corpus for obtaining DNA testing. *Ex parte McGinn*, 54 S.W.3d 324 (Tex.Crim.App.2000)(Womack, J. concurring, joined by Keller and Johnson, JJ.).

8. Dissenting opinion at 601.

9. *Id.* at 601.

10. *Id.* (quoting *Ex Parte Hughes*, 133 Tex. 505, 510, 129 S.W.2d 270, 273–274 (1939)).

11. *Id.* at 600.

12. *Id.* at 600–01.

13. Even if the question were one of continuing jurisdiction, the dissent points to no authority that would permit such continuing jurisdiction. There are many statutes granting continuing jurisdiction in particular contexts. *See* TEX. BUS. & COM. CODE § 17.47(e); TEX. CIV. PRAC. & REM. CODE § 71.051(c); TEX. CODE CRIM. PROC., Art. 42.12, §§ 6(a), 7(a), 8(a), 10; TEX. FAM. CODE §§ 3.307(a), 152.202(a), 155.001(a); TEX. FIN. CODE § 349.005(b); TEX. HEALTH & SAFETY CODE §§ 574.008(d), 713.009(c), 715.008(d). Clearly, the Legislature knows how to provide continuing jurisdiction if doing so is its intent.

*State*[14] that the trial court has "inherent jurisdiction and authority" to perform certain acts.[15] But nothing in *Awadelkariem*, either in the Court's opinion or in Judge Meyers' concurring opinion, suggests that there is such a thing as "inherent jurisdiction." Jurisdiction cannot be "inherent;" it is conferred by constitution or by statute. As Judge Meyers says in his concurrence, a trial court's ability to act "is limited, however, by the court's retention of jurisdiction or statutory authority over the matter." *Awadelkariem* concerned the power of a court to act while it still had jurisdiction, not whether a court could act without jurisdiction. Jurisdiction expires when a case becomes final or is taken to a higher court.[16] Any inherent powers possessed by the trial court as a result of its jurisdiction under Chapter 64 would necessarily be limited by Chapter 64. Thus, *Awadelkariem* might support a trial court's decision to rescind an order granting or denying DNA testing under Chapter 64 (for a limited time), but that case cannot be invoked to support a non-Chapter 64 basis for ordering DNA testing.

The dissent argues, correctly, that prior to the enactment of Chapter 64, the trial court would not have had jurisdiction to enter any order relating to post-conviction DNA testing. The dissent then finds inherent jurisdiction stemming from the filing of the Chapter 64 motion. But if the law is that the return, by statute, of jurisdiction to a trial court for a limited purpose invests the court with jurisdiction to act in matters other than those dictated by the statute, then that law would not be limited to DNA testing. If the trial court has jurisdiction to order DNA testing outside the statute, then it would have jurisdiction to enter or lift a stay of execution. Similar consequences could occur for other statutes conferring limited jurisdiction upon trial courts. The remand of a case to the trial court under Article 11.07, for instance, would allow the trial court to enter orders beyond the scope of our remand order because the trial court would have jurisdiction over the case. A remand for a trial court to make findings of fact under Art. 38.22, § 6 would create jurisdiction for the court to enter other orders.

The dissent also contends that the trial court should be empowered to order DNA testing at applicant's urging because the court would be empowered to order DNA testing if requested by the State.[17] This "reciprocity" theory assumes that the trial court has some generalized authority to issue such an order on behalf of the State; it does not. If the material is not within the possession of the prosecution or law enforcement, a search warrant could be issued if there were reasonable grounds to believe the DNA would lead to a perpetrator. Or a subpoena could be issued pursuant to a grand jury investigation. The State is no more entitled than a convicted person to an order compelling DNA testing simply because it wants one. Of course, the State could conduct DNA testing of material within the prosecution's possession without a court order, and under those circumstances, nothing prevents the State and the defendant from agreeing to a DNA test paid for by the defendant.[18]

---

14. 974 S.W.2d 721 (Tex.Crim.App.1998).

15. Dissenting opinion at 600, 601 n. 19.

16. See *Yarbrough, supra; Fruehauf Corp. v. Carrillo,* 848 S.W.2d 83, 84 (Tex.1993); *Scott & White Memorial Hosp. v. Schexnider,* 940

S.W.2d 594, 596 (Tex.1996); *Awadelkariem,* 974 S.W.2d at 729 (Meyers, J. concurring).

17. Dissenting opinion at 602 n. 22.

18. Although the trial court has custody of the DNA material in the present case, that custody occurred only because the prosecution de-

Finally, the dissent claims that absent a showing of harm, the State has failed to show that the trial court violated a ministerial duty. But whether there was a violation of such a duty should not be established by whether there is harm. The dissent confuses the legal issue of jurisdiction with the question of whether the act harms anyone. Jurisdiction exists or it does not. If it does not exist, the trial court cannot act. Questions of harm are not pertinent to the issue before us.

The State is entitled to a writ of mandamus from this Court ordering the trial court to vacate its order.[19] As is our custom, we will withhold issuance of the writ and accord the trial court an opportunity to conform its actions to this opinion.[20] Only if such action is not taken will the writ of mandamus issue.[21]

MEYERS, J., concurs.

HERVEY, J., filed a concurring opinion.

COCHRAN, J., filed a dissenting opinion in which HOLCOMB, J., joined.

JOHNSON, J., dissents.

PRICE, J., recused himself because he was the trial judge.

HERVEY, J., filed a concurring opinion.

I join Presiding Judge Keller's opinion. I write separately to more fully explain my reasons for deciding that the convicting court had no authority or jurisdiction to order DNA testing outside of the procedures set out in Chapter 64 of the Texas Code of Criminal Procedure.

livered the material to the court after the Chapter 64 motion was filed. Because the trial court has no authority to order testing, the State is entitled to the return of this material.

It is undisputed that the evidence of Mr. Patrick's guilt is overwhelming. *See Patrick v. State*, 906 S.W.2d 481, 485-86 (Tex. Cr.App.1995) cert. denied, 517 U.S. 1106, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996). This explains why the convicting court declined to order DNA testing under Chapter 64. *See Kutzner v. State*, 75 S.W.3d 427, 438–39 (Tex.Cr.App.2002) (Chapter 64 primarily intended to provide convicting court with jurisdiction to order DNA testing when a favorable DNA test "will prove a convicted person's innocence").

The convicting court nevertheless ordered that Mr. Patrick be permitted to have DNA testing by an independent forensic laboratory at his expense. But Texas courts derive their jurisdiction and authority to act from the Constitution and from legislative enactments, and I agree with Judge Keller's opinion that no such authority exists for the convicting court to execute such an order. *See* Article V, Section 8, Texas Constitution; *Austin & N.W.R. Co. v. Cluck*, 97 Tex. 172, 77 S.W. 403, 405 (1903); *Shelvin v. Lykos*, 741 S.W.2d 178, 182–85 (Tex.App.-Houston [1st Dist.] 1987, no writ) (district court lacked constitutional, statutory, inherent and implied authority to order blood tests of prisoner charged with aggravated sexual abuse to determine presence of AIDS virus or venereal disease).

It has been suggested, however, that the relator is not entitled to mandamus relief because once Mr. Patrick properly invoked the convicting court's Chapter 64 jurisdiction, the convicting court also acquired the authority to order DNA testing outside of the procedures set out in Chapter 64.

**19.** *See State ex. rel. Hill v. Pirtle*, 887 S.W.2d 921 (Tex.Crim.App.1994).

**20.** *Id.*

**21.** *Id.*

Such reasoning would also increase a convicting court's general jurisdiction to order DNA testing for a convicted person like Mr. Patrick who cannot meet the requirements of Chapter 64. To enlarge a convicting court's jurisdiction in such a fashion seems an endless proposition. Once a convicting court has re-acquired jurisdiction under the guise of Chapter 64 authority, what other action might the court feel free to take? Chapter 64 was intended to exonerate the innocent (not allow the guilty to "muddy the waters") by providing a convicting court with jurisdiction to order DNA testing **only** when a favorable DNA test "will prove a convicted person's innocence." *See Kutzner*, 75 S.W.3d at 438-39.

Finally, the dissent fashions an interpretation of Chapter 64 which thwarts the Legislative mandate to prevent the unreasonable delay of execution of sentence or the administration of justice. Last minute requests for DNA testing without regard to the promptness of the request, the proximity in time between the request and execution of sentence, or a determination as to when the convicted person could have previously requested DNA testing would

pose a hindrance to the Legislative mandate of Chapter 64 opposing unreasonable delay.

With these comments I join Judge Keller's opinion.

COCHRAN, J., filed a dissenting opinion in which Holcomb, J., joined.

I respectfully disagree that the State has demonstrated that it is entitled to the extraordinary relief of a writ of mandamus. Mandamus against a trial judge is available only when that judge has: 1) violated a clear ministerial duty;[1] or 2) committed a judicial act which is so clearly wrong as to be "beyond dispute."[2] In my view, Judge Greene has done neither.

## I.

Applicant and real-party-in-interest, Jesse Joe Patrick, was convicted of capital murder for the burglary-murder of Mrs. Nina Redd, an eighty-year old widow. The evidence at trial showed that the victim's "[t]hroat had been slashed, she had several fractured ribs, and there were bruises to her head, arms, chest, legs, and vaginal canal."[3] Extensive evidence

---

1. *Banales v. Court of Appeals for Thirteenth Judicial District*, 2002 WL 1021826, *2, 2002 Tex.Crim.App. LEXIS 108, *3, —— S.W.3d ——, —— (Tex.Crim.App.2002) (original proceeding). "An act is 'ministerial' if it constitutes a duty clearly fixed and required by law.... [A] 'ministerial' act is one which is accomplished without the exercise of discretion or judgment." *State ex rel. Curry v. Gray*, 726 S.W.2d 125, 128 (Tex.Crim.App.1987).

 In *Garcia v. Dial*, 596 S.W.2d 524 (Tex.Crim.App.1980), for example, the trial court initially granted the defendant's motion to dismiss the indictment. *Id.* at 526. The trial court later entered an order attempting to reinstate the indictment. *Id.* This Court held that once the indictment was dismissed, the trial court lost jurisdiction over the cause and had no power to enter any further orders. *Id.* at 528. In directing the trial court to set aside its order, we held "that the entry of

such order of dismissal under these circumstances is strictly ministerial in nature." *Id.* at 529. Thus, once a court loses jurisdiction to act, it cannot rise like a phoenix from the ashes and reassert its jurisdiction without statutory authority.

2. *Banales*, 2002 WL 1021826, *2, 2002 Tex.Crim.App. LEXIS at *4-5, —— S.W.3d at —— (mandamus is unavailable when issue is one "of first impression whose merits are not so 'clear and indisputable' as to be 'beyond dispute' "); *see also State of Texas ex rel. Hill v. Court of Appeals for the Fifth District*, 34 S.W.3d 924, 928 (Tex.Crim.App.2001); *State ex rel. Wade v. Mays*, 689 S.W.2d 893, 898-99 (Tex.Crim.App.1985).

3. *Patrick v. State*, 906 S.W.2d 481, 485 (Tex.Crim.App.1995).

linked applicant to the crime. Investigators matched applicant's palm print to a palm print taken from the victim's forced-open bathroom window. They found a rock stained with the victim's blood in applicant's yard, just two houses away from the victim's home. Inside applicant's home, they found his sock, also stained with Mrs. Redd's blood. Hair samples found at the scene were consistent with applicant's hair; applicant's teeth marks matched those on the victim's arm; and the knife used to kill Mrs. Redd was identified as appellee's. Furthermore, money was taken from Mrs. Redd's home and evidence showed that appellee had bought a car for $850 cash on the ·day of the murder. When he was arrested in Mississippi, appellee gave three different and inconsistent explanations for how he obtained the money that he used to buy the car and leave the state.[4] He also gave a written confession stating that he tried to have sexual intercourse with the victim before killing her but could not get an erection.[5]

Additionally, the medical examiner found spermatozoa in the victim's vaginal canal. Apparently, no DNA testing of that material was made before trial. It is the DNA testing of this evidence that is the subject of the present mandamus action.

Appellee filed a motion under newly enacted Chapter 64 of the Texas Code of Criminal Procedure which prescribes when and how a convicted person may obtain DNA testing.[6] The Texas Legislature enacted this Chapter in 2001, and it became effective on April 5, 2001. Appellee filed his motion one month later, in May, 2001. On August 31, 2001, the trial judge denied

appellee's request for state-sponsored and paid-for DNA testing under article 64.03. She found that appellee had failed to prove that "a reasonable probability exists that the person would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing."[7] No one quarrels with this ruling. But when appellee's counsel stated that he was willing to pay for the DNA testing, the trial judge ordered that applicant be permitted to have the spermatozoa sample tested by an independent forensic laboratory.

No one suggests that the trial judge was required to enter such an order or that applicant was entitled to such forensic testing simply because his attorney was willing to pay for it. He clearly was not entitled to any such testing because article 64.03 explicitly states that "[a] convicting court may order forensic DNA testing under this chapter *only* if ..." the convicted person shows, by a preponderance of the evidence, that exculpatory DNA testing would establish a "reasonable probability" that he would not have been prosecuted or convicted had the jury known of this exculpatory evidence. In this case, there was ample, if not overwhelming, circumstantial and forensic evidence that appellee murdered Mrs. Redd, without any DNA testing of the sperm. At most, a negative DNA test would merely suggest that another person participated in the crime with applicant. A negative DNA test in this case would not exonerate applicant. And that is what the trial judge concluded. Nonetheless, she allowed applicant to conduct independent DNA testing at his own expense. After a representative from the

---

4. *Id.* at 485–86.

5. This confession was not introduced at trial, but was discussed during the DNA hearing.

6. *See* Tex.Code Crim. Proc. arts. 64.01–64.05 (Vernon Supp.2002). This statute was passed in 2001

7. Tex.Code Crim. Proc. art. 64.03(a)(2)(A).

independent laboratory retrieved the semen sample from the court reporter, and delivered it to the GeneScreen lab, the Dallas County District Attorney's Office filed its writ of mandamus and appeal with this Court, which ordered a halt to the testing and transportation of the sample to the Department of Public Safety pending disposition of this writ and appeal.

## II.

The legal issue in this case is whether the trial judge had jurisdiction and judicial discretion to allow DNA testing, at the inmate's expense, after she ruled that even negative forensic results would fail to create a reasonable probability that applicant would not have been prosecuted or convicted of capital murder.

The first question is whether the trial judge had jurisdiction to enter *any* order in this case as the trial and direct appeal were complete and applicant had no writ of habeas corpus pending.[8] But for the enactment of Chapter 64 just one month before applicant filed his motion, the trial judge would not have had jurisdiction to enter any order relating to post-conviction

DNA testing. Indeed, this lack of jurisdiction was undoubtedly part of the Legislature's purpose for enacting Chapter 64 to provide a statutory mechanism for post-conviction DNA testing.[9] Because applicant filed a proper motion under article 64.01, the trial court had jurisdiction to entertain his request for DNA testing.[10] Did the trial judge have continuing jurisdiction to act upon a DNA request, once she stated on the record that applicant failed to demonstrate a reasonable probability that he would not have been prosecuted or convicted even if DNA testing showed that he was not the source of the sperm found at the scene?[11] This is a question of first impression,[12] which arose a mere four months after the statute had been enacted. When the trial judge entered her order, no appellate decision concerning the scope of or procedures under Chapter 64 existed.

Reasonable minds could differ upon this question. The majority is not incorrect in stating that "[t]he trial court did not cite a statutory provision, or any other source of authority, that would authorize the order for DNA testing, and we are unaware of

8. " 'It is ... axiomatic that where there is no jurisdiction, "the power of the court to act is as absent as if it did not exist," and any order entered by a court having no jurisdiction is void.' " *Green v. State*, 906 S.W.2d 937, 939 (Tex.Crim.App.1995) (quoting *Garcia v. Dial*, 596 S.W.2d 524, 528 (Tex.Crim.App. [Panel Op.] 1980)).

9. *See* Hearings on SB 3 before the Senate Jurisprudence Committee, 77th Leg. R.S., (*www.senate.state.tx.us*, Senate Jurisprudence Committee Video and Audio Archives at 0:26:35–0:27:00, February 12, 2001). *See also* DNA & Post Conviction Press Conference, 77th Leg., R.S., (*www.senate.state.tx.us*, Senate Jurisprudence Video and Audio Archives at 0:17:44–0:18:05, January 17, 2001)(discussing purposes of proposed post conviction DNA testing legislation).

10. Article 64.01 sets forth the requisites of a convicted person's motion for forensic DNA testing. There is no dispute in this case that appellee's motion was properly filed and presented under that statutory provision.

11. Clearly the district court did not have full or plenary jurisdiction over the entire case by virtue of a motion filed under Chapter 64, but the issue is whether she had jurisdiction to enter an order *relating to* Chapter 64 forensic DNA testing which is not explicitly authorized.

12. A mere four months ago this Court stated that mandamus against a trial judge is not available when his decision raises an issue of first impression, because such an order calls for the exercise of judicial discretion. *Banales*, 2002 WL 1021826, *2, 2002 Tex.Crim. App. LEXIS 108, *4, —— S.W.3d at ——.

any source of authority for this action." [13] Indeed, Chapter 64 does not provide any support for the trial court's order. The trial court's jurisdiction was properly invoked; the trial court appropriately entered a negative finding under article 64.03; she explicitly stated that she denied applicant's request for testing under Chapter 64; and then she nonetheless permitted appellee to conduct DNA testing at his own expense. That final order was not, and could not have been, made pursuant to Chapter 64 because article 64.03 explicitly limits a convicted person's right or entitlement to state-sponsored DNA testing to scenarios in which negative results *would* create a reasonable probability of exoneration.

But once the jurisdiction of a court is properly invoked, does that court have any discretion to enter orders which are not explicitly authorized? Depending upon the circumstances, one might follow one of two contradictory maxims: "Whatever is not forbidden is permitted," [14] or conversely, whatever is not explicitly authorized is forbidden.

In its brief, the State cites *Yarbrough v. State*[15] for the proposition that, once a conviction is affirmed on appeal, the trial court has limited jurisdiction to do whatever is reasonably necessary to carry out the appellate court's judgment and mandate.[16] That is correct. As this Court explained in *Yarbrough,* once post-conviction jurisdiction attaches, the trial court may perform acts which, although not explicitly authorized, are implicit to the jurisdictional purpose.[17] Not all judicial authority to act is explicit:

> Of course, jurisdiction is granted by law when it is either directly conferred or ought to be implied from the jurisdiction directly granted. In other words, our courts have such powers and jurisdiction as are directly provided by law, and, in addition thereto, they have such further powers and jurisdiction as are reasonably proper and necessary, that is, as ought to be inferred, from the powers and jurisdiction directly granted.[18]

As Judge Meyers has previously stated, this Court has "recognized that, in addition to express grants of power conferred by constitution, statute, or common law, courts have inherent and implied powers which provide a much broader foundation upon which to act." [19]

---

13. Majority op. at 594.

14. Johann Christoph Friedrich von Schiller, *Wallensteins Lager,* sc. vi (1798); *see, e.g., Morrison v. State,* 845 S.W.2d 882, 905 (Tex. Crim.App.1992) (Benavides, J., dissenting) ("trial judges should be allowed to implement truthfinding measures not forbidden by law so long as they do not thereby compromise fundamental standards of the adversary system").

15. 703 S.W.2d 645, 649 (Tex.Crim.App.1985).

16. *Id.* at 648.

17. This Court stated:
 We also agree with the appellant that there is not anything of an express nature in our law that might authorize a trial court to put a case on the docket "for sentence after

mandate," which is the cryptic phrase the trial judge in this cause used. However, the fact that there is no express statutory authority authorizing a trial court to put a case on its docket after the mandate of an appellate court has issued does not rule out implicit authority. In this instance, if the trial court had implicit authority to put the appellant's case on its docket after this Court's mandate issued, we find that it does not matter what the setting was labeled. *Id.*

18. *Ex parte Hughes,* 133 Tex. 505, 510, 129 S.W.2d 270, 273–74 (1939).

19. *Awadelkariem v. State,* 974 S.W.2d 721, 728 (Tex.Crim.App.1998) (Meyers, J., concurring) (citing *State v. Johnson,* 821 S.W.2d 609, 612 (Tex.Crim.App.1991) which cited *Eichel-*

In addressing the post-conviction DNA statute recently, this Court held that it is required to interpret the statute in a manner that effectuates the Legislature's intent.[20] In *Kutzner*, this Court held that the Legislature's purpose in enacting Chapter 64 was to provide a statutory mechanism to free innocent people through DNA testing.[21] Thus Chapter 64 was intended to increase a trial court's post-conviction jurisdiction and increase that judge's authority to order DNA testing. There is no indication that the Legislature intended to decrease trial court jurisdiction or diminish its authority when it enacted Chapter 64.

Appellee's counsel has argued that he believes the DNA testing would show appellee to be the contributor of the semen, but that his client now has no memory of the offense and wants "to put the matter to rest." This, of course, is not an appropriate rationale for ordering DNA testing under Chapter 64.[22] The statute is intended to exonerate the innocent, not to further inculpate those already found guilty. Nonetheless, is such a test "clearly and indisputably" forbidden by law if: 1) the convicted person pays for the testing; 2) such testing creates no delay; and 3) the convicted person has not requested any stay in the execution of his sentence during the time it takes to conduct the testing?[23] I cannot conclude that the trial court's order in this case is clearly and indisputably beyond the borders of the law. It is, at least, subject to some reasonable debate.

Absent any showing of actual and demonstrable harm to the interests of society, the State, or the orderly administration of justice,[24] I would conclude that the

---

*berger v. Eichelberger*, 582 S.W.2d 395, 398–99 (Tex.1979)).

In *Awadelkariem*, for example, this Court stated that, although no statute or rule expressly authorizes a judge to rescind an order granting a motion for new trial, the trial court nonetheless did have such inherent jurisdiction and authority. *Id.* at 726–28.

**20.** *Kutzner v. State*, 75 S.W.3d 427, 432 (Tex. Crim.App.2002) ("[our constitutional duty, of course, is] to effectuate what the Legislature intended when it enacted the statute").

**21.** *Id.* at 439, n. 23 (quoting record of legislative hearings).

**22.** One wonders what the result should be if the State had requested post-trial DNA testing of this same semen. Suppose, hypothetically, that another person confessed to being with applicant during the burglary/murder and to raping the victim. If the State's argument in this mandamus action were accepted, it, like applicant, would be forbidden from regaining custody of the trial evidence from the court reporter to have the semen tested because such post-conviction testing is not expressly authorized by statute. Either the trial court does or does not have jurisdiction to allow post-conviction DNA testing outside of Chapter 64. Chapter 64 does not explicitly authorize the State to conduct post-trial forensic testing of evidence admitted at trial, nor would such a request appear to be in accord with the Legislature's purpose in enacting that chapter. Yet I cannot conclude that it is abundantly clear that an order permitting the State to conduct post-conviction DNA testing is forbidden and thus subject to relief on a writ of mandamus.

**23.** If such an order did create unreasonable delay or if the trial court did grant a stay in the execution of the sentence as a part of the order, the State would have a strong case for its entitlement to a writ of mandamus to prevent tactics which merely "muddy the waters" and create delay. That is not the situation in this case.

**24.** The State argues that an order permitting DNA testing paid for by the inmate, violates the Equal Protection Clause because other indigent inmates could not do the same. This argument misses the point. Applicant does not argue that he is *entitled* to such testing. He simply argues that the trial judge had the discretion to permit it. The State also argues that applicant's post-conviction equitable

State has failed to show that Judge Greene violated a ministerial duty or issued an order so clearly and indisputably lacking any legal merit as to be "beyond dispute." A writ of mandamus is a drastic remedy and should be invoked only in truly extraordinary situations.[25]

Therefore, I would deny the State's request for a writ of mandamus.

remedy, if any, is solely by means of a writ of habeas corpus. But applicant is not attacking either his conviction or his sentence; he is merely requesting a forensic test.

25. *See State ex rel. Healey v. McMeans*, 884 S.W.2d 772, 774 (Tex.Crim.App.1994) ("When a trial judge is presented with an issue where there is no factual dispute, and clear, binding and unequivocal precedent compels resolution of the issue in only one manner, the trial judge has a ministerial duty to resolve that issue in that manner; the trial judge's actions are compelled by law").