# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-07-00629-CV

**In re Vanessa Cherry**

## ORIGINAL PROCEEDING FROM WILLIAMSON COUNTY

## O P I N I O N

On January 11, 2008, this court denied relator Cherry's petition for writs of mandamus and prohibition and dismissed as moot her motion for temporary relief. *See* Tex. R. App. P. 52.1, 52.10. Relator Cherry now files a motion for rehearing and reconsideration en banc. We grant her motion for rehearing, withdraw the January 11, 2008 opinion, and conditionally grant the petition for writ of mandamus.

## BACKGROUND

These proceedings stem from Cherry's criminal prosecution for her conduct in a child custody dispute with her ex-husband.[1] On October 18, 2004, Cherry committed the offense of interference with child custody. *See* Tex. Penal Code Ann. § 25.03 (West Supp. 2007).

---

[1] The underlying custody dispute was the subject of an appeal pending in this Court, but has since been settled and dismissed. *Cherry v. Serio,* No. 03-07-00126-CV (Tex. App.—Austin May 20, 2008, no pet.) (mem. op.) available at http://www.3rdcoa.courts.state.tx.us/opinions/pdfopinion.asp?opinionID=16851

On August 15, 2005, Cherry pled guilty to the offense in a plea bargain agreement with the State regarding punishment. The punishment agreed to and recommended to the court was that Cherry would receive three years' deferred adjudication, a $1,500 fine, and 15 days in jail. The district court conducted three hearings regarding sentencing and conditions: during the first hearing, Cherry pled guilty and indicated that she understood that her plea bargain with the State was for "three [years] deferred, a $1,500.00 fine, and 15 days in jail"; during the second hearing, Cherry reaffirmed her understanding of the plea agreement; and during the third hearing, the district court clarified some of the terms of Cherry's probation including restitution.

Following the third hearing, on October 18, 2005, the district court signed an "Order of Deferred Adjudication; Community Supervision." The order specified that Cherry would receive "3 Years Deferred Adjudication." The Order recited the date of the offense (October 18, 2004), the date of judgment (October 18, 2005), and the date the Order was to commence (October 18, 2004). Specifically, the Order provided that the three-year period of community supervision for which Cherry had plea-bargained would begin not on the date of judgment, but one year earlier, on precisely the same day she committed the offense. The Order provided, in relevant part, the following:

DATE OF JUDGMENT: **October 18, 2005**

*   *   *

OFFENSE: **Interference with Child Custody**

STATUTE FOR OFFENSE: **Section 25.03, Penal Code**

APPLICABLE PUNISHMENT RANGE: **State Jail Felony**

2

| | |
|---|---|
| DATE OF OFFENSE: | **October 18, 2004** |
| CHARGING INSTRUMENT: | **Indictment** |
| TERMS OF PLEA AGREEMENT . . .: | **3 Years Deferred Adjudication; $1,500 Fine; 15 Days Jail** |
| PLEA TO OFFENSE: | **Guilty** |

\* \* \*

| | |
|---|---|
| DATE ORDER TO COMMENCE: | **October 18, 2004** |
| PERIOD OF SUPERVISION: | **Three (3) years** |
| FINE: | **$1,500** |

The order listed the terms of the plea agreement as "3 years deferred adjudication" and then indicated the date the order is to commence is October 18, 2004. Therefore, according to the Order, Cherry's deferred adjudication began on October 18, 2004, and ended on October 18, 2007.

On October 24, 2007, Cherry filed a motion to discharge and dismiss claiming that she was entitled to discharge from community supervision under Texas Code of Criminal Procedure article 42.12 because she had successfully completed the term of her deferred adjudication on October 18, 2007, three years after the commencement date specified in the Order. Her motion was never ruled upon. Instead, on October 29, 2007, the trial court signed a "Nunc Pro Tunc Order of Deferred Adjudication; Community Supervision." This new Order changed the commencement date of Cherry's three-year deferred adjudication community supervision from October 18, 2004 (original Order) to October 18, 2005 (Nunc Pro Tunc Order).

3

On October 31, 2007, relator Cherry filed a motion to vacate the Nunc Pro Tunc Order claiming that a hearing was required before a nunc pro tunc order could be entered. The district court denied Cherry's motion. However, on November 19, 2007, the district court vacated the Nunc Pro Tunc Order and held a hearing on the issue. During the hearing, the State called two witnesses, Angela Brast, a Williamson County Adult Probation employee, and Shawn Dick, a former Williamson County District Attorney. Both testified that Cherry was to receive three years' deferred adjudication and both agreed that the original Order specified the commencement date was October 18, 2004. The district court subsequently entered a Second Nunc Pro Tunc Order of Deferred Adjudication Community Supervision changing the "date order to commence" from October 18, 2004, to October 18, 2005, the date the original judgment was issued.

## DISCUSSION

Relator Cherry now seeks mandamus and prohibition relief from this nunc pro tunc order. She argues that a judgment nunc pro tunc may only be used to correct the court's records to accurately reflect the judgment actually rendered, but that here, the court used nunc pro tunc to improperly modify the judgment actually rendered. She also claims that the nunc pro tunc order was improperly entered because the district court did not have jurisdiction.

*Mandamus*

Mandamus relief is available if the relator demonstrates that (1) there is no other adequate legal remedy and (2) there is a clear and indisputable right to the relief sought. *See State v. Patrick*, 86 S.W.3d 592, 594 (Tex. Crim. App. 2002). In other words, mandamus relief is

4

appropriate if there is no adequate remedy at law, and the act sought to be compelled is purely ministerial. *See Winters v. Presiding Judge of the Crim. Dist. Court No. Three*, 118 S.W.3d 773, 775 (Tex. Crim. App. 2003). Mandamus relief is also appropriate to set aside an order entered by a trial court acting without jurisdiction when there is not another remedy. *See Patrick*, 86 S.W.3d at 595-97. Where the trial court's order is void, it is unnecessary for the relator to show she pursued other available remedies, and mandamus will issue. *See In re Southwestern Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding).[2]

*Deferred Adjudication Jurisdiction*

Texas Code of Criminal Procedure article 42.12 governs community supervision. Section 5 specifically governs deferred adjudication. Once a defendant is placed on community supervision, the district court retains jurisdiction over the probationer during the probationary term. This enables the court to modify, revoke, or dismiss the probation. *See* Tex. Code Crim. Proc. Ann. art. 42.12 § 5(a-c), § 21(e), § 22 (West Supp. 2007). Once the probationary period expires, the trial court, if it has not proceeded to an "adjudication of guilt," must "dismiss the proceedings against the defendant and discharge him." *Id.* § 5(c). After the probationary period expires, there must be a timely filing of a motion to revoke probation and a timely issuance of a warrant or capias for a trial

---

[2] Cherry also seeks prohibition relief. A writ of prohibition is proper to prevent a trial court from acting when the court lacks jurisdiction. *Board of Disciplinary Appeals v. McFall*, 888 S.W.2d 471, 472 (Tex. 1994) (orig. proceeding). The writ is designed to operate like an injunction to control, limit, or prevent action in a court of inferior jurisdiction. *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 682 (Tex. 1989). A writ of prohibition directs a lower court to refrain from doing some act, while a writ of mandamus commands a lower court to do some act. *Tilton v. Marshall*, 925 S.W.2d 672, 676 n.4 (Tex. 1996). Because we find mandamus relief appropriate here, we need not address Cherry's prohibition relief claim.

court's jurisdiction to continue. *See id.* § 21(e). Thus, even after the probationary term has expired, a trial court retains jurisdiction to extend a period of community supervision if a motion to revoke is filed and a capias is issued before the period of supervision ends. However, absent these statutory requirements, a trial court has no jurisdiction to modify community supervision after the supervision term has expired. *See Ex parte Fulce,* 993 S.W.2d 660, 662 (Tex. Crim. App. 1999). Here, there was neither an "adjudication of guilt" nor any hearing concerning revoking, continuing, or modifying community supervision before the expiration of Cherry's deferred adjudication. Therefore, the trial court, absent authority (such as a valid nunc pro tunc), had no jurisdiction to modify or extend relator Cherry's deferred adjudication community supervision.

*Nunc Pro Tunc*

Having concluded that the probationary term had expired and that the trial court lacked jurisdiction to alter the terms of Cherry's supervision, we must now consider whether the change was properly made through a valid nunc pro tunc order. Although generally a trial court loses its jurisdictional power after the expiration of the community supervision period, a valid judgment nunc pro tunc can be entered at any time, even after the trial court has lost jurisdiction over the case. *State v. Bates*, 889 S.W.2d 306, 309 (Tex. Crim. App. 1994); *In re Hancock,* 212 S.W.3d 922, 927 (Tex. App.—Fort Worth 2007, orig. proceeding). The purpose of a nunc pro tunc order is to correctly reflect, from the court's records, a judgment actually made, but which for some reason was not entered at the proper time. *Ex parte Poe*, 751 S.W.2d 873, 876 (Tex. Crim. App. 1988); *see Ex parte Dopps,* 723 S.W.2d 669, 670 (Tex. Crim. App. 1986). A judgment nunc pro tunc is the appropriate avenue to make a correction when the court's records do not mirror the judgment that

6

was actually rendered. *Alvarez v. State*, 605 S.W.2d 615, 617 (Tex. Crim. App. 1980). Nunc pro tunc orders are for correction of clerical errors, not judicial errors. *Bates*, 889 S.W.2d at 309. In other words, a nunc pro tunc order can only be used to make corrections to ensure that the judgment conforms with what was already determined and not what should have been determined; "before a judgment nunc pro tunc may be entered, there must be proof that the proposed judgment was actually rendered or pronounced at an earlier time." *Wilson v. State*, 677 S.W.2d 518, 521 (Tex. Crim. App. 1984); *In re Hancock*, 212 S.W.3d at 928. Whether an error is judicial or clerical in nature is a question of law. *Alvarez*, 605 S.W.2d at 617.

In the instant case, the only evidence as to the commencement date of the supervision is the recital found in the original deferred adjudication Order. The Order states that the period of supervision was to begin on October 18, 2004.[3] There is no evidence in the record to reflect that the date change in the nunc pro tunc order to October 18, 2005 was made to bring the written judgment into conformity with a previous judgment. The testimony and other evidence relied on by the State merely shows that Cherry bargained for and received three years' deferred adjudication. Although the district court repeated several times that the terms of the plea agreement required a three-year deferred adjudication period, the court never specified a start date other than that reflected in the Order. There is nothing in the record to indicate that the court in fact ordered Cherry's supervision to begin on October 18, 2005. So, although the trial court may have meant for Cherry's period of

---

[3] We have found nothing that forecloses the possibility that a district court might render a judgment with a deferred adjudication start date prior to the date the judgment was rendered or that would compel a conclusion that the start date for deferred adjudication must be the same date that a judgment is rendered.

supervision to begin on October 18, 2005, it ordered that the period of supervision was to begin on October 18, 2004. A correction nunc pro tunc "can be only as to what was done and not as to what should have been done." *Ex parte Dopps*, 723 S.W.2d at 671; *In re Hancock*, 212 S.W.3d at 928.

Therefore, we conclude that the error, if any, was judicial and not clerical in nature. A judgment nunc pro tunc should be issued only if the record is clear and convincing that a clerical error was made. *See Riner v. Briargrove Park Prop. Owners, Inc.*, 976 S.W.2d 680, 682 (Tex. App.—Houston [1st Dist.] 1998, no pet.). There is no such evidence here. This is not a situation involving a typical clerical change such as correction of a party name, correction of the date of judgment, or correction of a numerical error. *See Escobar v. Escobar*, 711 S.W.2d 230, 232 (Tex. 1986); *Carlyle Real Estate Ltd. P'ship-X v. Leibman*, 782 S.W.2d 230, 233 (Tex. App.—Houston [1st Dist.] 1989, no writ); *Nolan v. Bettis,* 562 S.W.2d 520, 523 (Tex. Civ. App.—Austin 1978, no writ). Nor is this a situation in which the record clearly shows that the change was to the judgment entered and not the judgment rendered. A court can only correct a final written judgment that incorrectly states the judgment actually rendered. Thus, if the court renders incorrectly, it cannot alter a written judgment that precisely reflects the incorrect rendition. *See Escobar,* 711 S.W.2d at 232; *compare Ex parte Poe*, 751 S.W.2d at 876 (trial court's entry of judgment nunc pro tunc to reflect jury's finding of deadly weapon proper because omission in original judgment was clerical error), and *Rabsatt v. State*, No. 03-06-00668-CR, 2007 Tex. App. LEXIS 9031 (Tex. App.—Austin Nov. 15, 2007, pet. struck) (mem. op.) (not designated for publication) (judgment nunc pro tunc to mirror jury's affirmative finding of deadly weapon proper), *with Fanniel v. State*, 73 S.W.3d 557, 559 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (trial

8

court's entry of judgment nunc pro tunc to include affirmative finding of deadly weapon was improper because absence of such finding in original judgment was result of judicial reasoning rather than clerical error). A nunc pro tunc order may not be used as it was used here—to modify an order previously made. *See Ex parte Dickerson,* 702 S.W.2d 657, 658 (Tex. Crim. App. 1986); *In re Hancock*, 212 S.W.3d at 927. A nunc pro tunc judgment made to correct a judicial error is void. *In re Ruselier,* 56 S.W.3d 265, 268 (Tex. App.—Houston [1st Dist.] 2001, orig. proceeding).

We hold that the district court was without authority to enter the nunc pro tunc order; therefore, the nunc pro tunc order is void. Because Cherry was past the end of her probationary period and there was no other jurisdictional basis for the district court's action, the court lacked jurisdiction to do anything further in this case other than to discharge Cherry from probation.

*Relief*

Accordingly, because the nunc pro tunc order is void, relator Cherry has satisfied the prerequisites to mandamus relief. *See In re Ford Motor Co.*, 965 S.W.2d 571, 573 (Tex. App.—Houston [14th Dist.] 1997, orig. proceeding) (if trial court's order is void, relator does not need to show it pursued other available remedies and mandamus will issue if trial court violates duty imposed by law or clearly abused its discretion).

**CONCLUSION**

We grant Cherry's motion for rehearing, withdraw the January 11, 2008 opinion, and conditionally grant the writ of mandamus, directing respondent to withdraw the nunc pro tunc order issued November 29, 2007. We trust that the district court will promptly take this action, and the

9

writ will issue only if the trial court fails to comply with our opinion. We dismiss the motion for reconsideration en banc.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Puryear and Pemberton;
    Dissenting Opinion by Justice Pemberton

Filed: July 10, 2008