02-11-303-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00303-CR

 

 


 
 
 Willie Earl Hall Jr.
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

----------

 

FROM THE 371st
District Court OF Tarrant COUNTY

----------

 

OPINION

----------

          In
two points, appellant Willie Earl Hall Jr. appeals the trial court’s “Judgment
Revoking Community Supervision.”  We affirm.

Background
Facts

          In
2008, when appellant was fifteen years old, the State filed a petition alleging
that he had engaged in delinquent conduct.  Appellant waived his rights to
confront witnesses and to have a jury trial, and he entered into a plea bargain
agreement with the State.  The terms of the plea bargain included appellant’s
stipulation that he had committed aggravated sexual assault of a seven-year-old
child.[1]  Based on the plea
bargain, the juvenile court adjudicated appellant to be delinquent, assessed a
five-year determinate sentence, suspended that sentence for five years, and
placed appellant on probation.[2]  Appellant’s probation
began on June 26, 2008.

          In
July 2010, pursuant to the State’s motion and a hearing that appellant attended
with counsel, appellant’s probation was transferred to a district court (the
trial court); the transfer order recognizes that appellant had already been “found
to have engaged in delinquent conduct.”[3]  In conjunction with the
transfer of his probation to the trial court, appellant signed a document
stating that he would comply with the conditions of his community supervision.

          Although
no document filed in the juvenile court had alluded to a deferral of that
court’s adjudication of appellant’s delinquency, and although the record from
the juvenile court clearly shows that appellant had been adjudicated delinquent,
documents filed in the trial court after the transfer, including one document
titled “Certificate of Proceedings,” state that appellant had been placed on
deferred adjudication in 2008.[4]  The trial court imposed
several conditions on appellant’s probation.

          In
March 2011, the State filed a “Petition to Proceed to Adjudication,” alleging
that appellant had violated several terms of the probation.  That petition
asked the trial court to require appellant to show cause why the court should
not proceed to the adjudication of his guilt.  Two months later, the State
filed its “First Amended Petition to Revoke Probated Sentence,” which, unlike
the first petition, prayed for the trial court to require appellant to appear
and show cause why his “sentence should not be imposed and put into execution[]
as the law provides.”

          In
July 2011, the trial court held a hearing on the amended petition to revoke
appellant’s probated sentence, not the original petition to proceed to
adjudication.[5]  Toward the beginning of
the hearing, appellant recognized that he had been placed on a “five-year
straight probation” term while his sentence was suspended.  Appellant pled true
to several allegations contained in the State’s amended petition and judicially
confessed to them; on the record, he expressed his understanding that by entering
pleas of true, the trial court could find that he violated the terms of his
probation and could sentence him to up to five years’ confinement.  After
appellant entered his pleas of true, the State rested.  Appellant called a few
witnesses to testify about his behavior and treatment while he was on
probation.  In closing arguments, appellant’s counsel asked the trial court to
allow appellant to remain on probation, but the trial court verbally found that
appellant had violated the terms of his probation and sentenced him to four
years’ confinement.[6]

          Although
the trial court did not verbally purport to adjudicate appellant’s guilt for
aggravated sexual assault, the court originally entered a written judgment titled
“Judgment Adjudicating Guilt.”  Appellant appealed that judgment, contending
that the judgment was improper.  In an abatement order, we agreed
that the judgment was improper; we noted, in part, that double jeopardy bars a conviction
for the same act for which a juvenile has been adjudicated delinquent.  We
explained in the abatement order that while the trial court had statutory
authority to revoke appellant’s probation and impose a prison sentence, it could
not convict appellant of aggravated sexual assault.  Because the trial court’s
original written judgment adjudicating guilt differed from the court’s verbally
expressed intentions at the end of the revocation hearing, we noted in our
abatement order that the record suggested that a clerical error might have
occurred.  Therefore, we abated the appeal, remanded the case to the trial
court, and ordered the trial court to conduct a hearing to determine whether
the written judgment contained a clerical error that was subject to
correction.  We notified the trial court that if it determined that the written
judgment contained a clerical error, the court needed to correct the error
through a nunc pro tunc judgment and make findings of facts and conclusions of
law concerning its decision about whether the judgment contained a clerical
error.

          Upon
our abatement, the trial court held a hearing in which it expressed,

          The judgment [adjudicating guilt] does not
reflect the intent of this Court, nor does it reflect what actually happened at
juvenile.

          Mr. Hall was on a determinate sentence probation
which is what we would call in the adult system after transfer [of] a straight
probation.  It was entered in the clerk’s record as a determinate sentence
deferred adjudication which this Court believes to be impossible.  That is
incorrect.  It’s a clerical error by the clerk.  That clerical order,
unfortunately, was carried forward throughout the file, which the Court’s
intent in this case, which was reflected in the revocation hearing, is that
this is the straight probation that was transferred from juvenile.  This
Court does not have any intent to change that, nor does this Court believe this
Court has the power to change a finding of guilt that’s already been entered
into a deferred adjudication.  And every document thereafter that reflects a
deferred adjudication, including the judgment adjudicating guilt, needs to be
changed to be in conformity with the determinate sentence straight probation
that Mr. Hall was on.  [Emphasis added.]

After
the hearing concluded, the trial court signed a “Nunc Pro Tunc Order Correcting
Minutes of the Court,” which changed the title of the original judgment from
“Judgment Adjudicating Guilt” to “Judgment Revoking Community Supervision.”  Appellant
filed a supplemental brief in which he asserts two points and asks us to
discharge him from custody and release him from further community supervision.

The
Propriety of the Nunc Pro Tunc Order

          In
the first point of his supplemental brief, appellant argues that the trial
court’s original judgment adjudicating guilt was not the product of a clerical
error.  Appellant first contends that the “trial court at the [abatement]
hearing did not address whether the signing of the judgment adjudicating guilt
was . . . the result of a clerical error.”  We disagree with this factual
contention; as shown above, during the abatement hearing, the trial court made
clear on the record that the judgment adjudicating guilt did not reflect the
intent of the court and that, instead, a clerical error had been “carried
throughout the file.”  Also, the trial court’s final conclusion of law, which
the trial court entered after the abatement hearing, states, “In this case,
because the intent of this Court was to continue Appellant’s straight probation
and have a normal recovation proceeding, this Court’s judgment reflecting an
adjudication of guilt was the product of a clerical error.”

          Appellant
also argues that even assuming that the trial court stated that the signing of
the judgment adjudicating guilt was a clerical error, the record does not
support that statement, but it rather shows that the trial court made an error
caused by judicial reasoning that could not be corrected through a nunc pro
tunc order.  The classification of an error as clerical or judicial is a
question of law.  See Ex parte Poe, 751 S.W.2d 873, 876 (Tex. Crim. App.
1988); Alvarez v. State, 605 S.W.2d 615, 617 (Tex. Crim. App. [Panel
Op.] 1980).  Clerical errors in judgments are subject to correction through
judgments nunc pro tunc.  English v. State, 592 S.W.2d 949, 955–56 (Tex.
Crim. App.), cert. denied, 449 U.S. 891 (1980); Johnson v. State,
233 S.W.3d 420, 425–26 (Tex. App.—Fort Worth 2007, pet. ref’d); In re
Hancock, 212 S.W.3d 922, 927 (Tex. App.—Fort Worth 2007, orig. proceeding).

          A
judgment may reflect a clerical error when it incorrectly records the judgment
rendered, so long as a product of judicial reasoning is not involved.  See
Alvarez, 605 S.W.2d at 617.  A court “renders” a judgment when “orally
in open court or by written memorandum signed by [it] and delivered to the
clerk, the [court] pronounces . . . a decision of the law upon given state of
facts.”  Westbrook v. State, 753 S.W.2d 158, 160 (Tex. Crim. App. 1988)
(Clinton, J., concurring) (citing Comet Aluminum Co. v. Dibrell, 450
S.W.2d 56, 58 (Tex. 1970)); see also S & A Rest. Corp. v. Leal, 892
S.W.2d 855, 857 (Tex. 1995) (“Judgment is rendered when the trial court
officially announces its decision in open court . . . .”).  The purpose of a
nunc pro tunc judgment is to reflect the truth of what actually occurred in the
trial court.  Alvarez, 605 S.W.2d at 617.  “The trial court cannot,
through a judgment nunc pro tunc, change a court’s records to reflect what it
believes should have been done.”  Collins v. State, 240 S.W.3d 925, 928
(Tex. Crim. App. 2007).  Thus, “before a judgment nunc pro tunc may be entered,
there must be proof that the proposed judgment was actually rendered or
pronounced at an earlier time.”  Id. (quoting Wilson v. State,
677 S.W.2d 518, 521 (Tex. Crim. App. 1984)).  When a trial court corrects its
records to reflect the truth of what happened in the court, the court is
correcting a clerical error, not a judicial error.  See Poe, 751 S.W.2d
at 876; see also In re Cherry, 258 S.W.3d 328, 333 (Tex. App.—Austin
2008, orig. proceeding) (explaining that a “nunc pro tunc order can only be
used to make corrections to ensure that the judgment conforms with what was
already determined and not what should have been determined”).

          These
cases illustrate that the question that we must resolve in determining the
validity of the trial court’s nunc pro tunc judgment is whether the nunc pro
tunc judgment truthfully aligns with the judgment that the court originally rendered
or, instead, whether the nunc pro tunc judgment changes, through judicial
reasoning, the judgment that the court originally rendered.  As we have
explained above, the record from the revocation hearing indicates that the trial
court and the parties understood that the State was proceeding on its amended
petition, which sought only revocation of appellant’s probation, and not on its
original petition, which sought adjudication of his guilt.  At the end of the
revocation hearing, the trial court stated,

          Mr. Hall, the Court having received your pleas
of true to Paragraphs 1, 2, 4, and 5, the Court will find those allegations to
be true and find that you violated the terms and conditions of your probation.

          . . . .

          I’ll set your sentence at four years[’] confinement
in the Institutional Division of the Texas Department of Criminal Justice.

It will be the order of this Court
that you be delivered by the sheriff of Tarrant County to the director of the
Institutional Division where you’ll serve your sentence as required by law.

          As
this excerpt from the record shows, in orally rendering its judgment, the trial
court did not purport to adjudicate appellant’s guilt, which is what the
original written judgment reflected.  Instead, the court unambiguously revoked
appellant’s probation and sentenced him, and the nunc pro tunc order accurately
reflects this judicial reasoning.

          Thus,
under the authority cited above, we hold that the trial court did not err by
entering the nunc pro tunc order and changing the title of the judgment from
one adjudicating guilt to one revoking community supervision.  Cf. Collins,
240 S.W.3d at 928 (“It is clear from the record of the trial court that there
was no clerical error that this judgment nunc pro tunc was correcting.  The
written judgment perfectly matches the judgment pronounced in court.”).

          Finally,
we note that appellant did not object to the fact that the revocation hearing
proceeded on the amended petition.  He also did not object in the trial court
to any nonconformity between the trial court’s oral rendition of judgment that
sentenced him to confinement by revoking straight probation and documents that
had previously been filed in the case that indicated that he was on deferred
adjudication.  And appellant concedes that he had notice of the “term and
conditions of his probation and [of] his required behavior to avoid being
placed in jail.”

          For
all of these reasons, we overrule appellant’s first point.[7]

Double
Jeopardy

          In
his second point, appellant asserts that the “order of the trial court placing [him]
on deferred adjudication probation as well as his subsequent conviction violated
[his] rights to be free of double jeopardy.”[8]  As
we have explained,

          The Double Jeopardy Clause of the United States
Constitution provides that no person shall be subjected to twice having life or
limb in jeopardy for the same offense.  U.S. Const. amend. V.  Generally, this
clause protects against (1) a second prosecution for the same offense after
acquittal, (2) a second prosecution for the same offense after conviction, and
(3) multiple punishments for the same offense.

Washington
v. State, 326 S.W.3d 302, 311 (Tex. App.—Fort Worth 2010, pet.
ref’d) (citing Ex parte Cavazos, 203 S.W.3d 333, 336 (Tex. Crim. App.
2006)); see also Ex parte Wheeler, 203 S.W.3d 317, 322 (Tex. Crim. App.
2006) (“The double jeopardy provisions of the federal and Texas constitutions
protect a citizen from repeated attempts at prosecution for the same criminal
offense.”).

          Appellant
argues that he suffered a second prosecution for the same offense after
conviction when, according to documents filed after the transfer of his suspended
sentence and probation from the juvenile court, he was placed on deferred adjudication
and therefore faced the threat of being adjudicated guilty.  The court of
criminal appeals has concluded that double jeopardy bars a conviction for the
same act for which a juvenile has been adjudicated delinquent.  See Ex parte
Elizalde, 594 S.W.2d 105, 106 (Tex. Crim. App. 1980) (op. on reh’g) (citing
Breed v. Jones, 421 U.S. 519, 532, 541, 95 S. Ct. 1779, 1787, 1791
(1975)); Van Hatten v. State, 97 Tex. Crim. 123, 125, 260 S.W. 581, 582
(1924) (“[I]f a juvenile is proceeded against as a delinquent child . . . he
cannot again be prosecuted by the state and convicted of a felony upon the
identical offense upon which the delinquency conviction was predicated.”); see
also Tex. Fam. Code Ann. § 54.02(j)(3) (West Supp. 2011) (stating that
a district court may initiate criminal proceedings over a juvenile only when
“no adjudication concerning the alleged offense has been made”); In re
M.A.V., 88 S.W.3d 327, 329–30 (Tex. App.—San Antonio 2002, no pet.)
(discussing Breed).  Therefore, while the trial court had statutory
authority to revoke appellant’s probation and impose a prison sentence, see
Tex. Fam. Code Ann. § 54.051(e-2), it could not convict appellant of
aggravated sexual assault.

          Appellant
argues that the “record clearly reflects that [he] was charged with and
convicted of the same offense for a second time.”  We disagree.  As described
above, the trial court explained in the abatement hearing that references to
deferred adjudication after the transfer from the juvenile court were
unintended clerical errors.  The actual order transferring appellant’s case
from the juvenile court to the trial court did not reference deferred
adjudication; it correctly explained that appellant had already been
adjudicated delinquent and had been placed on probation.  The State sought
revocation of the probation in its amended petition, which did not seek
adjudication of guilt, and the trial court verbally rendered judgment in accordance
with the amended petition.  Finally, although the trial court’s initial written
judgment incorrectly stated that appellant had been adjudicated guilty despite
the absence of any rendition of guilt from the trial court’s record, the trial
court has corrected that judgment through its nunc pro tunc order.  For these
reasons, we reject appellant’s claim that the trial court’s proceedings
violated federal or state principles of double jeopardy, and we overrule his
second point.

Conclusion

          Having
overruled appellant’s points in his original and supplemental briefs, we affirm
the trial court’s judgment.

 

 

 

TERRIE LIVINGSTON

CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; WALKER and MCCOY, JJ.

 

PUBLISH

 

DELIVERED:  June 14, 2012









[1]See Tex. Penal Code
Ann. § 22.021(a)(1)(B)(i), (2)(B) (West Supp. 2011).





[2]See Tex. Fam. Code
Ann. § 54.04(d)(3), (q) (West Supp. 2011).





[3]See id. §§
54.04(q), .051(a), (d) (West Supp. 2011).





[4]When a district court
exercises jurisdiction over a juvenile through a transfer of the juvenile’s probation
under section 54.051 of the family code, the district court “shall place the child
on community supervision . . . for the remainder of the child’s probationary
period and under conditions consistent with those ordered by the juvenile
court.”  Id. § 54.051(e) (emphasis added).





[5]Appellant recognized in
his original brief that the State’s second petition amended its first petition
and that the trial court held a hearing on the second petition.





[6]If a transferred defendant
who has been adjudicated delinquent violates the conditions of his probation,
the district court may “reduce the prison sentence to any length.”  Id. §
54.051(e-2); Krupa v. State, 286 S.W.3d 74, 77 (Tex. App.—Waco 2009,
pet. ref’d).  The trial court’s reduction of appellant’s sentence from five
years to four years indicates the court’s awareness of the modified punishment
range associated with section 54.051(e-2).





[7]In his original brief,
appellant’s sole point stated, “The document entitled Judgment Adjudicating
Guilt was not authorized by law . . . .”  Because we have held that the trial
court did not err by entering its nunc pro tunc order, which replaced the
judgment adjudicating guilt with a judgment revoking community supervision, we
overrule appellant’s point from his original brief.





[8]Appellant cites double
jeopardy provisions contained in the federal and state constitutions and in a
state statute.  He does not argue that the state double jeopardy standard
differs from the federal standard with respect to his issues raised in his point.