In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00033-CR

                                                ______________________________

 

 

                                     THE STATE OF
TEXAS, Appellant

 

                                                                V.

 

                               DANNY LEE HOLLOWAY, II, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the Sixth
Judicial District Court

                                                             Lamar County, Texas

                                                            Trial
Court No. 18662

 

                                                          
                                        

 

 

 

                                              Before Carter, Moseley,
and Miller,* JJ.

                                                          Opinion by Justice Carter

 

___________________________

*District Judge John F. Miller, Jr., of the 102nd
Judicial District Court, was appointed by order of Chief Justice Wallace
Jefferson of the Texas Supreme Court, pursuant to Tex. Gov’t Code Ann. § 74.003(h) (Vernon 2005), to sit with
this Court and hear this appeal in place of Chief Justice Josh R. Morriss, III,
who recused himself from the proceeding.

 

 








                                                                   O P I N I O N

 

I.          Introduction

 

            DNA
testing done seven years after the conviction of Danny Lee Holloway, II, for
manslaughter showed the victim’s blood was not on the knife allegedly used as
the deadly weapon.  As a result, the
trial court concluded Holloway probably would not have been convicted had that
evidence been available at trial, and granted Holloway a new trial.  We find that conclusion is not supported by
evidence and, even if it was, the trial court was not authorized to grant a new
trial. 

II.        Facts and Procedural History

             Holloway was convicted in 2002 for
manslaughter by using a knife as a deadly weapon.   He later petitioned for DNA testing of the
knife, and the trial court granted Holloway’s motion on April 29, 2009.   No appeal was taken from that order.  On February 25, 2010, the trial court
conducted a hearing pursuant to Article 64.04 of the Texas Code of Criminal
Procedure, granted Holloway a new trial,[1]
and set a $75,000.00 bond.[2]  Later, the trial court entered findings of
fact and conclusions of law, one of which found that there is a reasonable
probability that Holloway would not have been convicted if the exculpatory DNA
results had been available for trial. 
The State appeals the orders, contending that the trial court should not
have authorized DNA testing because Holloway did not prove that identity was an
issue and should not have granted a new trial because the court erred in its
conclusions of law.  The initial question
is whether the State has filed a timely appeal to the order granting DNA
testing. 

III.       May the State Now Appeal the April 29,
2009, Order Granting DNA Testing?  

            Holloway
argues the State did not file its appeal concerning the order for testing in a
timely manner. 

            A.        Appellate
Timetable 

            The
State’s right to appeal in criminal cases is limited by statute.   See
Tex. Code Crim. Proc. Ann. art.
44.01(a)(3), (6) (Vernon Supp. 2010). 
Article 64.05, describing the procedure for appeals in Chapter 64
proceedings, directs that all appeals follow the usual procedures designated
for appeals to the courts of appeals, except death penalty appeals are to the Texas
Court of Criminal Appeals.  The State is
required to appeal within twenty days of the order, ruling, or sentence about
which it is complaining.   Tex. Code Crim. Proc. Ann. art.
44.01(d) (Vernon Supp. 2010).[3]  The trial court’s order allowing DNA testing
was entered April 29, 2009.  The State
failed to appeal within twenty days of the April 29, 2009, order.  But the State argues this appeal is effective
as to the April 29, 2009, order, basing its contention primarily on In re Morton, No. 03-08-00585-CR, 2010
Tex. App. LEXIS 93 (Tex. App.—Austin Jan. 8, 2010, no pet.).  We find Morton
to be distinguishable.  

 

 


            B.        In re Morton 

 

            Post-conviction,
Morton asked for DNA testing of several items, including swabs from the victim,
a bloody bandana found about 100 yards from the murder scene (Morton was
convicted of killing his wife in their bedroom), fingerprints at the scene, and
items from another, unrelated murder victim, killed in the same neighborhood six
years before Morton’s wife was murdered. 
Id. at **3–4.  In 2006, the trial court granted Morton’s
request for testing on biological material from the victim and denied his
request for testing on the bandana.  For
almost two years, the trial court failed to rule on the testing of biological
material from the prior unrelated matter; apparently under compulsion of a
mandamus ruling, the trial court in 2008 denied testing of the unrelated case
material.[4]  Morton appealed after the final trial court
order of July 24, 2008, and the State argued Morton had not timely perfected
his appeal of the 2006 order denying testing on the bandana.   The State
claimed Morton had to appeal within thirty days of the 2006 order, which denied
testing on the bandana, because the trial court’s order regarding the bandana
was part of Morton’s appellate complaint.[5]  Id. at
*8.

            The
Austin court rejected the State’s assertion:  


We do not read chapter 64 of the code of
criminal procedure to require a separate notice of appeal for each of the three
orders in this case.  . . . Instead, we
hold that in a chapter 64 proceeding the final order that denies forensic DNA
testing . . . or that makes the required findings following the granting of DNA
testing, . . . triggers the running of the notice-of-appeal deadline as to all
such orders in the proceeding.

 

Id. at
*10 (citations omitted).  

             The State in the instant case relies upon this
language in Morton as authority that
the trial court’s order of February 25, 2010, granting a new trial, was the
final order making Article 64.04’s required findings.  Thus, reasons the State, it did not need to
appeal within twenty days of the April 29, 2009, order.   

            The
procedural events in Morton differ
from this case.  Morton requested DNA
testing of four separate groups of material. 
The trial court initially entered an order on two items; not until
almost two years later did the court finally rule on the remaining two
items.  After the trial court entered
orders on all requested items for testing—granting some and denying others—Morton
appealed the order denying testing.   The
specific portion of the appeal in question was the denial of testing of a bandana at a time when some issues still
remained as to testing of other material, whereas here the appeal is from the granting of DNA testing when no other
issues were pending.          An order granting DNA testing is a
significant order that if left unchallenged leads to gathering of additional
evidence.  As a result of the order
granting Holloway’s motion for testing and the failure to lodge an appeal, the
knife has been scientifically examined. 
If the appeal had been filed in a timely manner, this Court conceivably
could have reversed the order and precluded the testing; that option is no
longer available.  The evidence gathered
from the DNA testing of the knife now exists. 
If Holloway can use this evidence either in this proceeding or in an
application for writ of habeas corpus, we know of no exclusionary rule
prohibiting it.     

            To
require the State to wait until after the trial court reviews the evidence and
determines whether it is exculpatory denies the State a valuable right—to
attempt to reverse the order granting the test. 
If the order granting testing is erroneous, a successful appeal would
also save the expense of the scientific analysis.  In Morton,
all of the appeals involved orders denying testing rather than granting them,
and the statement regarding the time for filing an appeal for when DNA testing
is granted is dicta.  We hold that the order
granting the DNA testing is the appealable order and the State must appeal
within the appropriate time from that order.  See State v. Young, 242 S.W.3d 926 (Tex.
App.—Dallas 2008, no pet.) (State’s appeal of order granting forensic DNA
testing).  

            Unlike
Morton, here there was no other
motion or request for DNA examination of any other item; the DNA motion was for
testing of the knife only.  If the trial
court erred in granting the request for testing the knife, the State had a
right to appeal that order and request that DNA testing and analysis be stayed
during the appeal.  Had that course of
action been followed, this Court could have rendered a decision that would have
had a legal and practical effect; today, that is not possible.  Houston
Indep. Sch. Dist. v. Houston Teachers
Ass’n, 617 S.W.2d 765, 766 (Tex. Civ. App.—Houston [14th Dist.] 1981, no
pet.) (appellate courts do not decide cases where a party seeks judgment upon
some matter which, when rendered, cannot have any practical legal effect upon
the case). 

            We
hold that the notice of appeal must have been filed within twenty days of the
April 29, 2009, order granting DNA testing, as it was the order being
challenged; we lack jurisdiction to consider this point of error.  Olivo v.
State, 918 S.W.2d 519, 522 (Tex. Crim. App. 1996) (timely notice of appeal
necessary to invoke a court of appeals’ jurisdiction).  We dismiss that portion of the State’s
appeal.   

IV.       The Order Granting a New Trial

            The
State filed a timely appeal to the order granting a new trial and argues the
trial court erred because one of the conclusions of the trial court was
erroneous as a matter of law.   We agree
the trial court erred in granting the new trial, but not for the reason argued
by the State.

            The
trial court’s jurisdiction expires when a case becomes final or is taken to a
higher court. In re State ex rel.
Sistrunk, 142 S.W.3d 497, 503 (Tex. App.—Houston [14th Dist.] 2004, no pet.)
(citing Yarbrough v. State, 703
S.W.2d 645, 649 (Tex. Crim. App. 1985)) (where conviction affirmed by Texas Court
of Criminal Appeals, general jurisdiction is not restored to trial court; trial
court is vested with special or limited jurisdiction to see that Texas Court of
Criminal Appeals’ judgment is executed and mandate carried out).  A trial court then has only limited
jurisdiction to perform functions specified by statute, such as finding facts
on an application for writ of habeas corpus.  State v.
Patrick, 86 S.W.3d 592, 594 (Tex. Crim. App. 2002).  Without jurisdiction, the trial court has no
power to act.  Id. at 595.  Generally, a
trial court has plenary jurisdiction over a case for the first thirty days
after sentencing because it has the authority to receive a motion for new trial
(or motion in arrest of judgment) within that time period and to resolve the
merits of that motion within seventy-five days after sentencing.  See Tex. R. App. P. 21; McClinton v. State, 121 S.W.3d 768, 778
n.1 (Tex. Crim. App. 2003) (Cochran, J., concurring).  A court has inherent power to correct, modify,
vacate, or amend its own rulings so long as the court does not exceed a
statutory timetable.  Awadelkariem v. State, 974 S.W.2d 721,
728 (Tex. Crim. App. 1998).

            Holloway
was convicted and sentenced on October 31, 2002.  This Court affirmed the conviction, a
petition for review was denied, and our mandate issued May 27, 2004.  Six years later, on February 24, 2010, the
trial court signed an order purporting to grant a new trial.  The trial court lost its plenary power to
grant a new trial seventy-five days after convicting and sentencing Holloway,
on October 31, 2002.[6]  Tex.
R. App. P. 21.8(a).  Both parties
asserted in oral argument that either Chapter 64 or the trial court’s
discretion authorized a new trial order in this case.  From the citations and discussion above, we
think it is clear the trial court has no jurisdiction, and thus certainly no
discretion, to order a new trial at this late date.  As for Chapter 64, there is nothing in the
statute authorizing the granting of a new trial.  In Ex
parte Tuley, 109 S.W.3d 388, 391 (Tex. Crim. App. 2002), the Texas Court of
Criminal Appeals stated, “Chapter 64 provides for forensic DNA testing but does
not provide a vehicle for obtaining relief if testing reveals affirmative
evidence of innocence.  The vehicle for
relief after obtaining test results that constitute affirmative evidence of
innocence is article 11.07 for noncapital felonies and article 11.071 for
capital murder.”[7]  

            The
trial court’s order granting a new trial and setting bond for Holloway’s
release is vacated.

V.        Article 64.04 Finding

            As
part of the State’s appeal of the trial court’s entry of an order granting a
new trial, the State challenges the trial court’s conclusion of law wherein the
trial court found “[t]here is a reasonable probability that Danny Holloway
would not have been convicted in this case if the exculpatory DNA results been
[sic] available during the trial of this case.” 

            If
the trial court orders DNA testing, it must hold a hearing and “make a finding
as to whether, had the results been available during the trial of the offense,
it is reasonably probable that the person would not have been convicted.”   Tex.
Code Crim. Proc. Ann. art. 64.04. 
Here, the trial court held a hearing on February 25, 2010, at which Holloway
formally offered the DNA test results from the stains found on the knife
admitted at trial.  The State did not
object; the court then heard arguments of the parties.  While the trial judge made statements
indicating his impressions of what the trial testimony had been, he did not
make any formal findings at the hearing. 
Instead, he ordered a new trial be granted and set a bond.  About six weeks later, on April 12, 2010,
Holloway submitted proposed findings of fact and conclusions of law, which the
trial court approved April 12, 2010.

             The Texas Court of Criminal Appeals has not
set out the standard of review of a trial court’s finding under Article 64.04,
but has found a de novo review is proper under Article 64.03(a)(2)(A), which
requires the defendant prove by a preponderance of the evidence that he or she
would not have been convicted if exculpatory results had been obtained through
DNA testing.  Smith v. State, 165 S.W.3d 361, 363–64 (Tex. Crim. App. 2005).  The Texas Court of Criminal Appeals noted
that there were no credibility and demeanor issues in that case since there
were no witnesses at the hearing and the trial record and an affidavit were the
only evidence.  Id. at 363.  Similarly, here
the record consists of the trial record and written records together with
counsel’s arguments.  We will use the de
novo review as the standard.  See Rivera
v. State, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002) (“Although there may be
subsidiary fact issues that are reviewed deferentially, the ultimate question
of whether a reasonable probability exists that exculpatory DNA tests would
prove innocence is an application of law to fact question that does not turn on
credibility and demeanor and is therefore reviewed de novo.”); Frank v. State,
190 S.W.3d 136 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (using de novo
standard of review in Article 64.04 cases).[8]


            As
previously stated, the DNA test results verified that the victim’s blood was
not found on the knife.  From this
scientific determination, the trial court concluded that there was a reasonable
probability that Holloway would not have been convicted if the DNA results had
been available at trial.  We do not agree
that it logically follows that a negative finding of the victim’s blood on the
knife provides a reasonable probability that Holloway would not have been
convicted.   If the victim’s blood had
been found on the knife, it would be extremely persuasive that this knife was
used as the murder weapon, but that evidence alone would not lead to the
conclusion that Holloway caused the death. 
Conversely, the fact that the victim’s blood was not on the knife may
reveal:  (1) this knife was not the
murder weapon; (2) no residue of the victim’s blood was deposited on the knife;
or (3) the knife was successfully cleaned—it does not provide evidence that
Holloway did not use a knife and cause the victim’s death.  There is a substantial amount of other
evidence directly probative of whether Holloway caused the death. 

            Holloway
argues that the State proved this knife was “the murder weapon” and as such
this evidence exculpates him.  But in the
opinion on Holloway’s direct appeal it is stated “there is a dispute over
whether this was the knife Holloway originally had, Holloway was seen . . . with
a survival knife before Lee was stabbed.”  Further Holloway’s girlfriend testified he
only had a small pocketknife, not the knife introduced into evidence.  Holloway
v. State, No. 06-02-00216-CR, 2003 WL 22491053, at *1 (Tex. App.—Texarkana
Nov. 5, 2003, pet. ref’d) (mem. op., not designated for publication).  

            The
fact that the victim’s blood or DNA was not found on the knife in Holloway’s
vehicle does not create a reasonable probability that Holloway was
innocent.  See Kutzner v. State, 75
S.W.3d 427, 438–39 (Tex. Crim. App. 2002). 
In Thompson v. State, 95
S.W.3d 469 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d),[9]
the movant wanted DNA testing on a box cutter found at the scene of the
crime.   In affirming the trial court’s
order denying DNA testing, the appellate court said, “[E]ven if DNA testing
proved that the box cutter did not contain complainant’s blood or any blood at
all, it would not prove [Thompson]’s innocence.”   Id. at
472.  Noting that even if testing produced
“negative test results” that could “supply an exculpatory inference, such an
inference . . . would not conclusively outweigh the other evidence of [Thompson’s]
guilt.”  Id. (citing Rivera, 89
S.W.3d at 60).  Thompson was identified
by the victim as one of the three people who assaulted the victim with a box
cutter.  A box cutter, with what appeared
to be blood on it, was found where Thompson had been standing.  It appears from the opinion that the victim
identified Thompson as the one who had stabbed him.  The victim identified the box cutter found
near Thompson as the instrument with which the victim was stabbed. 

            In
Rivera, the Texas Court of Criminal
Appeals held that even if Rivera’s requested DNA testing were performed, the
results would not prove his innocence.  Rivera
wanted DNA testing done on his fingernail clippings:  “While the presence of the [victim]’s DNA
under appellant’s fingernails could indicate guilt, the absence of such DNA
would not indicate innocence.”  Rivera, 89 S.W.3d at 60.  

            In
determining whether there was a reasonable probability that Holloway would not
have been convicted if this evidence had been available, we must also consider
all of the other evidence the jury heard. 
Two witnesses, Taquilla Gray and Derrick Dillard, testified they saw
Holloway stab the victim.  Gray also saw
Holloway stab Mike Lipscomb, another person at the scene.  Gerald Edwards also saw Holloway stab
Lipscomb.

            The
other witness who testified to seeing Holloway stab the victim also saw
Holloway stab another person at the scene, Courtney Gray (no relation to
Taquilla Gray).  Gray also testified that
Holloway stabbed him.  Dillard testified
he saw Holloway stab Courtney Gray. 
Multiple witnesses testified no one but Holloway had a knife at the
scene.  At least five witnesses saw
Holloway with a knife.  Holloway
presented one witness who said he had seen a different person with either the
knife in evidence or one similar, and that person was involved in two fights
outside the club the night of the offense. 
Several witnesses testified Holloway was swinging the knife wildly at
the crowd, and there was testimony Holloway, a Caucasian, also hurled racial
epithets at the predominantly African-American crowd and drove recklessly into
the parking area.  In his statement to
police, Holloway explained the knife, wrapped in a towel, was put in his car as
he and his girlfriend drove away from the scene.  Holloway said the knife must have been put in
his car by someone in the crowd who reached in a window while trying to stab
Holloway.  He denied having a knife, but
said he may have picked one up in fighting off his attackers and possibly
taking a knife from one of them.  A
movant under Chapter 64 must demonstrate a reasonable probability that he or
she would not have been convicted if the DNA results were presented to the
jury; this showing is not made if the test results would “merely muddy the
waters.”  See Rivera, 89 S.W.3d at
59 (citing Kutzner, 75 S.W.3d at 439).  

            We dismiss the State’s appeal of the
order granting DNA testing.  We vacate
the order granting a new trial and setting bond.  After reviewing the evidence de novo, we find
it is insufficient to support the trial court’s finding that it is reasonably
probable Holloway would not have been convicted if the DNA evidence had been
available during trial.  We remand the
case to the trial court for entry of a capias for the arrest and incarceration
of Holloway in order that he serve the remainder of the sentence. 

 

                                                            

                                                                        Jack Carter

                                                                        Justice

 

Date Submitted:          November
3, 2010

Date Decided:             December
10, 2010

 

Publish            











[1]After
examining the results of testing under Article 64.03, the convicting court
shall hold a hearing and make a finding as to whether, had the results been
available during the trial of the offense, it is reasonably probable that the
person would not have been convicted.  Tex. Code Crim. Proc. Ann. art. 64.04 (Vernon 2006). 

 





[2]A
bond in that amount is contained in the record, and we assume Holloway was
released on that bond. 





[3]Chapter
64 also allows for appeals of orders entered under that chapter:   “An appeal under this chapter is to a court
of appeals in the same manner as an appeal of any other criminal matter, . . .
.”  Tex.
Code Crim. Proc. Ann. art. 64.05 (Vernon 2006).   





[4]According
to a footnote in Morton, a ruling on
the second two requested items was not made until the conditional grant of
mandamus by the Austin Court of Appeals. 
Morton, 2010 Tex. App. LEXIS
93, at **4–5 n.2.  

 





[5]Morton
also complained on appeal the trial court should have granted testing on the
biological material from the other murder victim and on the fingerprints
obtained at the Morton home.  





[6]“[O]nce
a motion for new trial is overruled by operation of law, the trial court loses
jurisdiction to rule upon it.”  State v. Moore, 225 S.W.3d 556, 566–67
(Tex. Crim. App. 2007) (citations omitted).





[7]In
Ex parte Baker, 185 S.W.3d 894, 896
n.19 (Tex. Crim. App. 2006), the Texas Court of Criminal Appeals cited Tuley as “dicta.”  Tuley
was a habeas proceeding where the victim had recanted and the trial court
recommended relief be granted.  The Texas
Court of Criminal Appeals’ opinion found that even though Tuley pled guilty, he
was not precluded from later asserting actual innocence.  Further, “a motion for DNA testing cannot, by
itself, result in relief from a conviction or sentence.  It is simply a vehicle for obtaining a
certain type of evidence, which might then be used in a state or federal habeas
proceeding.”   Thacker v. State, 177 S.W.3d 926, 927 (Tex. Crim. App. 2005).





[8]Articles
64.03 and 64.04 originally required evidence a movant would not be prosecuted
or convicted if favorable results were obtained.  The requirements were amended to only require
findings the movant would not be convicted. 
See Tex. Code Crim. Proc. Ann. arts. 64.03, 64.04; Act of Apr.
25, 2003, 78th Leg., R.S., ch. 13, §§ 3, 4, 2003 Tex. Gen. Laws 16 (amended
2007) (current version at Tex. Code
Crim. Proc. Ann. arts. 64.03, 64.04 (Vernon Supp. 2010)).  





[9]Thompson, as well as most of the cases
discussed in this section, addressed denials of testing under Article
64.03.  We cite and discuss these cases
because they all address whether the particular movants satisfied Article
64.03’s requirement of proving by a preponderance of evidence the movant would
not have been convicted if exculpatory results had been obtained by DNA
testing.  Tex. Code Crim. Proc. Ann. art. 64.03(a)(2) (Vernon Supp.
2010).