

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-77,046

### HENRY WATKINS SKINNER, Appellant

### v.

### THE STATE OF TEXAS

### ON DIRECT APPEAL FROM CAUSE NO. 5216
### FROM THE 31ST JUDICIAL DISTRICT COURT
### GRAY COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., JOHNSON, KEASLER, ALCALA, RICHARDSON, YEARY, and NEWELL, JJ., joined. MEYERS, J., dissented.

### O P I N I O N

Appellant was convicted of capital murder and sentenced to death for killing his girlfriend and her two sons in the home that they shared. On direct appeal, his conviction was affirmed. *Skinner v. State*, 956 S.W.2d 532 (Tex. Crim. App. 1997). Subsequent to his conviction, DNA testing was conducted pursuant to Chapter 64, and the trial court found that the test results were not favorable to Appellant. He now appeals that finding

and asks us to decide whether it is reasonably probable that, had the test results been available at trial, he would not have been convicted. However, we will abate this appeal for further proceedings.

## JURISDICTION

### *1. Procedural background*

On our own motion, we issued an order requesting the parties to address whether this appeal arises from a properly filed Chapter 64 motion. *See Skinner v. State*, No. AP-77,046 (Tex. Crim. App. Mar. 18, 2015) (per curiam) (not designated for publication) (order requesting briefing on jurisdiction) (citing *State v. Patrick*, 86 S.W.3d 592 (Tex. Crim. App. 2002)). Because a review of the relevant procedural history is helpful to the resolution of this issue, we summarize that history now.

After the convicting court denied Appellant's motion for postconviction DNA testing under Chapter 64, he appealed that adverse finding to this Court. *See* TEX. CODE CRIM. PROC. art. 64.05 (providing for direct appeal to the Court of Criminal Appeals in death-penalty cases). But before we could reach a decision, the parties agreed to DNA testing and filed with the convicting court a document titled "Joint Motion to Vacate and Remand for Submission of an Agreed Proposed Order for Forensic DNA Testing." Based on that agreement, we dismissed Appellant's appeal "with the understanding that the parties will file with the trial court their agreed Chapter 64 motion to engage in forensic testing." *Skinner v. State*, No. AP-76,675, 2012 WL 2343616 (Tex. Crim. App. June 20,

2012) (per curiam) (not designated for publication) (ordering the appeal dismissed as moot). Subsequently, the parties filed with the convicting court an "Agreed Joint Order of the Parties for DNA Testing," which was adopted by the judge. That joint filing states that, "The parties have come to an agreement under which the Court will authorize DNA testing of evidence in this case under Chapter 64 of the Code of Criminal Procedure. Upon due consideration, the Court adopts the Agreed Joint Order." The parties agree that the order was a joint motion and argue that the convicting court treated the "Agreed Joint Order of the Parties" as a Chapter 64 motion, as evidenced by its adoption of the filing, its granting of DNA testing in accordance with Chapter 64, and its subsequent issuance of findings as dictated by Chapter 64.

To determine if we have jurisdiction, we must resolve two interrelated issues. First, should we construe the "Agreed Joint Order of the Parties for DNA Testing" in this case as a Chapter 64 motion? Second, if we do construe that filing as a Chapter 64 motion, does the fact that it is not accompanied by an affidavit sworn to by Appellant deprive this Court of jurisdiction? TEX. CODE CRIM. PROC. art. 64.01(a-1) (requiring that a person must submit a motion for postconviction DNA testing under Chapter 64 and that that motion must be accompanied by an affidavit sworn to by the convicted person). For the reasons we explain below, we conclude that the joint filing is a Chapter 64 motion, and the absence of an accompanying sworn affidavit does not deprive this Court of jurisdiction.

### *2. The law*

A court always has jurisdiction to determine whether it has jurisdiction over a matter,[1] and jurisdiction is a systemic requirement that appellate courts must review regardless of whether the issue is raised by the parties. *See Ex parte Moss*, 446 S.W.3d 786, 788 (Tex. Crim. App. 2014) (jurisdiction is systemic). Once the general jurisdiction of a trial court is exhausted, it has only limited jurisdiction to carry out a higher court's mandate[2] and to perform functions specified by law,[3] such as determining entitlement to postconviction DNA testing.[4] *Patrick*, 86 S.W.3d at 594. "[P]rior to the enactment of Chapter 64, [a] trial court would not have had jurisdiction to enter any order relating to post-conviction DNA testing." *Id.* at 596. In other words, in enacting Chapter 64, the Legislature provided a source of limited jurisdiction for a court to entertain a movant's request for postconviction DNA testing and a framework for trial courts to conduct those proceedings. To invoke that subject-matter jurisdiction, however, the movant must file a Chapter 64 motion.

---

[1] *Olivo v. State*, 918 S.W.2d 519, 523 (Tex. Crim. App. 1996).

[2] TEX. R. APP. P. 25.2(g) (explaining that, "[o]nce the record has been filed in the appellate court, all further proceedings in the trial court—except as provided otherwise by law or by these rules—will be suspended until the trial court receives the appellate-court mandate").

[3] TEX. R. APP. P. 21 (describing the authority of a trial court with respect to new trials), *id.* 23 (nunc pro tunc authority of trial courts).

[4] *See* TEX. CODE CRIM. PROC. Chap. 64 (authorizing a convicting court, under certain circumstances, to order postconviction DNA testing and decide whether relief should be granted).

*3. Analysis*

### A. The joint filing is a Chapter 64 motion.

Our precedent is clear that when construing an order or motion, we consider the substance of the filing and not just the label attached to it.[5] And while the style of the joint filing in this case did not use the word "motion," we decline to extend talismanic meaning to a single word in the caption of a filing. Such a holding would contradict our caselaw and common sense. The parties have consistently argued that they intended for their joint filing to be a Chapter 64 motion and that the judge understood the filing to be a joint motion. More importantly, the substance of the joint filing supports the arguments of the parties. We will construe the filing as a Chapter 64 motion and now address whether the absence of an affidavit accompanying the motion deprives this Court of jurisdiction.

### B. The lack of an accompanying affidavit is a pleading deficiency, not a jurisdictional requirement.

Article 64.01 requires a movant seeking postconviction DNA testing to submit a motion to the convicting court and that motion must be accompanied by a sworn affidavit. TEX. CODE CRIM. PROC. art. 64.01(a-1). And although we have not addressed the affidavit requirement in Chapter 64, we have discussed analogous requirements, which we find

---

[5] *See Ex parte Thomas*, 953 S.W.2d 286, 289 (Tex. Crim. App. 1997); *State v. Moreno*, 807 S.W.2d 327, 333 (Tex. Crim. App. 1991) ("An appellate court, in order to determine its jurisdiction, must look to the effect of any orders concerning an indictment or information, not what the trial court or the parties at trial have labeled such orders."); *State v. Young*, 810 S.W.2d 221, 223 (Tex. Crim. App. 1991) (explaining that the "mere label attached either to the defendant's motion or to the trial court's order ruling on [the] same cannot determine its appealability").

instructive in resolving this issue.[6] In those cases, we treated the failure to comply with a verification requirement as a pleading deficiency, not a jurisdictional issue. *Rouse v. State*, 300 S.W.3d 754, 758–59, 761–62 (Tex. Crim. App. 2009); *see Druery*, 412 S.W.3d at 532–33 (execution competency); *Ex parte Golden*, 991 S.W.2d at 861 (postconviction writs of habeas corpus); *Connor*, 877 S.W.2d at 326 (motions for new trial). However, we have emphasized that a pleading deficiency, though not jurisdictional, may nonetheless be fatal to a filing if there was no hearing at which the non-moving party had an opportunity to respond to the filing, the non-moving party did not address the substance of the motion, or the non-moving party objected to the lack of verification. *Druery*, 412 S.W.3d at 533 (citing *Rouse*, 300 S.W.3d at 761–62). These considerations reflect the reasonable policy that, while a respondent should not be taxed for the failure of a movant to comply with a particular statute, the proceedings should not summarily conclude when the respondent not only does not object to the deficiency but affirmatively asks for the proceedings to continue (as in this case). This preserves scarce judicial resources and honors the wishes of the parties.

---

[6]*Druery v. State*, 412 S.W.3d 523, 532–33 (Tex. Crim. App. 2013) (execution competency); *Ex parte Golden*, 991 S.W.2d 859, 861 (Tex. Crim. App. 1999) (postconviction writs of habeas corpus); *Connor v. State*, 877 S.W.2d 325, 326 (Tex. Crim. App. 1994) (motions for new trial). In *Druery*, this Court addressed Article 46.05 governing competency to be executed, which requires a person filing a motion under that provision to "clearly set forth alleged facts in support of the assertion that the defendant is presently incompetent to be executed." TEX. CODE CRIM. PROC. art. 46.05. In *Golden*, we construed Article 11.14, which requires an application for a writ of habeas corpus to include an oath stating that "the allegations of the petition are true, according to the belief of the petitioner." *Id.* art. 11.14(5).

Applying these principles to the case at hand, the record is clear that the State did not object to the lack of verification given that the filing was a *joint* one. We hold that Appellant's failure to comply with the verification requirement of Chapter 64 is a non-fatal pleading deficiency.

## FURTHER PROCEEDINGS NECESSARY

Having determined that we have jurisdiction to review this case, we find that further proceedings are necessary. On February 19, 2016, this Court received a document entitled "Appellant's Advisory to the Court Regarding Potential Errors in DNA Analysis by Texas Dept. of Public Safety." In this document, Appellant advises the Court that he has received notices from multiple entities informing him that the DNA results reported in his case may be in error. Specifically, the results reported may have been affected by errors identified in the statistical databases relied on by DPS and by the manner in which DPS analyzed the DNA mixtures.

Attached to this advisory is a June 30, 2015 notice Appellant received from DPS, in which the Deputy Assistant Director of DPS's Crime Laboratory Service stated that, if a request was received in writing, "the Texas DPS Crime Laboratory System will recalculate and report statistics previously reported in individual cases."[7] Upon receiving

---

[7]In an August 21, 2015 letter from the Texas Forensic Science Commission to the "Members of the Texas Criminal Justice Community," the Commission recommends that prosecutors and defense attorneys alike who have a currently pending case involving a DNA mixture "consider requesting confirmation that [the] Combined Probability of Inclusion/Exclusion (referred to as "CPI" or "CPE") [in a particular case] was calculated by the laboratory using current and proper mixture interpretation protocols." If the laboratory is unable

this notice, Appellant "promptly notified the Attorney General's Office that he was requesting the review and revision offered by DPS's notice and was informed that the Attorney General's Office had itself already made that request." This request is memorialized in a July 2015 email included with the advisory. Appellant explains in his advisory that, in light of his communication with the Attorney General's Office, Appellant expected DPS to "promptly review its work and provide [him] with its revised results[.]" However, months have now passed, and no such revision has been provided. Consequently, in February 2016, Appellant directly asked DPS to review its work in the case, correct any errors, and provide him with the results and any other materials necessary to evaluate DPS's review."

In light of Appellant's advisory and the nature of this issue, this Court has determined that further fact-finding and analysis by the trial court may be in order. Thus, we abate this appeal and remand the case to the trial court. On remand, the trial court shall (1) ensure that the recalculation is performed in a timely manner[8] and delivered to the parties and the court and (2) make any further findings and conclusions necessary upon receiving the results of the recalculation. The trial court is instructed to resolve this

---

to confirm use of the current protocols, "counsel should consider requesting a re-calculation of CPI/CPE." Counsel in this case has requested a recalculation.

[8]Article 64.03(c) of the Texas Code of Criminal Procedure provides that a court may order forensic DNA testing to be conducted by "(1) the Department of Public Safety; (2) a laboratory operating under a contract with the department; or (3) on the request of the convicted person, another laboratory if that laboratory is accredited under Article 38.01." This provision should also apply to the re-calculation.

issue within 90 days of the date of this order, after which the record of the proceedings on remand will be immediately sent to this Court for the reinstatement of the appeal. Any extensions of this time shall be obtained from this Court.

Hervey, J.

Delivered: March 9, 2016

Publish