# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00388-CR

---

### In re Guadalupe Padilla

---

**FROM THE 167TH DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-DC-95-952802, THE HONORABLE P. DAVID WAHLBERG, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Guadalupe Padilla, who is serving concurrent prison sentences for two child sexual abuse offenses, appeals the trial court's order denying his motion for subsequent postconviction forensic DNA testing under Chapter 64 of the Code of Criminal Procedure and his motion requesting the appointment of counsel for the Chapter 64 proceeding. *See* Tex. Code Crim. Proc. arts. 64.01(a-1), (c). We will affirm.

## BACKGROUND[1]

In 2002, a jury found Padilla guilty of aggravated sexual assault of a child and indecency with a child by sexual contact for sexually abusing his girlfriend's eleven-year-old daughter in 1994, *see* Tex. Penal Code §§ 22.021(a)(1)(B), 21.11(a)(1), and sentenced him to

---

[1] The facts of this case have been discussed in prior opinions of this Court, *see Padilla v. State*, No. 03-12-00300-CR, 2013 WL 3185896, at *1–2 (Tex. App.—Austin June 20, 2013, pet. ref'd) (mem. op., not designated for publication); *Padilla v. State*, No. 03-02-00345-CR, 2003 WL 21401256, at *1 (Tex. App.—Austin June 19, 2003, pet. ref'd) (mem. op., not designated for publication), so we do not repeat them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4.

thirty-seven years' and fifteen years' imprisonment, respectively, *see id.* §§ 12.32, 12.33; *Padilla v. State*, No. 03-02-00345-CR, 2003 WL 21401256, at *1 (Tex. App.—Austin June 19, 2003, pet. ref'd) (mem. op., not designated for publication). This Court affirmed Padilla's convictions on appeal. *See id.* at *5.

In 2004, Padilla began filing requests for the appointment of counsel to assist him in seeking postconviction forensic DNA testing. *See* Tex. Code Crim. Proc. arts. 64.01–.05. After his second request for appointed counsel was denied, Padilla appealed the trial court's decision. This Court reversed the trial court's order denying appointed counsel and held that Padilla was entitled to the appointment of counsel.[2] *See In re Padilla*, No. 03-07-00712-CR, 2008 WL 2468735 (Tex. App.—Austin June 18, 2008, no pet.) (mem. op., not designated for publication). The trial court subsequently granted Padilla's motion for DNA testing; Padilla attempted to appeal the order granting testing.[3] Concluding that an order granting DNA testing is not a final appealable order under Chapter 64, this Court dismissed that appeal for want of jurisdiction. *See Ex parte Padilla*, No. 03-10-00667-CR, 2010 WL 5019166, *1–2 (Tex. App.—Austin Dec. 10, 2010, pet. ref'd) (mem. op., not designated for publication). After the DNA

---

[2] At that time, due to a recently issued opinion by the Court of Criminal Appeals, *Blacklock v. State*, 235 S.W.3d 231 (Tex. Crim. App. 2007), the State conceded Padilla's entitlement to appointed counsel in its brief and joined in the request for remand to the trial court for the appointment of counsel. This Court's opinion was issued before the Court of Criminal Appeals issued its opinion in *Gutierrez v. State*, which held that the trial court's decision to deny appointed counsel under article 64.01(c) is not an immediately appealable order. *See Gutierrez v. State*, 307 S.W.3d 318, 319 (Tex. Crim. App. 2010).

[3] This Court's opinion reflected that the trial court ordered DNA testing in June 2009, March 2010, and September 2010, and that Padilla sought to appeal the September order. *Ex parte Padilla*, No. 03-10-00667-CR, 2010 WL 5019166, at *1 (Tex. App.—Austin Dec. 10, 2010, pet. ref'd) (mem. op., not designated for publication). The opinion indicated that it was unclear from the record why Padilla sought to appeal the order *granting* his request for testing, although the opinion noted that in his notice of appeal, Padilla complained of appointed counsel's "defective representation." *Id.* at *1 n.1.

testing was completed, the trial court concluded in its final order, issued in July 2011, that "the results of the post-conviction DNA testing were not exculpatory and that it was not reasonably probable that Padilla would not have been convicted had those results been available during his trial." *See Padilla v. State*, No. 03-12-00300-CR, 2013 WL 3185896, at \*2 (Tex. App.—Austin June 20, 2013, pet. ref'd) (mem. op., not designated for publication). No appeal was taken from that order. *See id.*

In August 2011, Padilla filed a pro se motion for subsequent DNA testing and, two months later, another pro se request for the appointment of counsel under Chapter 64. *See id.* In March 2012, the trial court entered orders denying Padilla's motion for subsequent DNA testing and his subsequent request for the appointment of counsel. *See id.* In 2013, this Court affirmed the trial court's order denying Padilla's motion for subsequent DNA testing and concluded that the trial court's decision to deny Padilla's subsequent request for appointed counsel was not error.[4] *See id.* at \*9–10.

---

[4] Padilla filed a separate notice of appeal of the trial court's order denying his request for appointed counsel. We dismissed that appeal for want of jurisdiction, and, instead, addressed Padilla's complaint about the court's refusal to appoint counsel in his appeal of the trial court's order denying his motion for subsequent DNA testing. *See Padilla v. State*, 03-12-00299-CR, 2013 WL 3185896, at \*3, \*9–10 (Tex. App.—Austin June 20, 2013, pet. ref'd); *see also Whitfield v. State*, 430 S.W.3d 405, 408 n.11 (Tex. Crim. App. 2014) (stating that trial court's decision to deny appointed counsel in Chapter 64 proceeding is preliminary matter that is not immediately appealable; rather, convicted person may raise any alleged error in trial court's refusal to appoint counsel in appeal of trial court's denial of motion requesting DNA testing) (citing *Gutierrez*, 307 S.W.3d at 323).

Padilla had also filed in the trial court, five motions in connection with his request for subsequent DNA testing, the denial of which he attempted to appeal. We dismissed that appeal for want of jurisdiction, concluding that the trial court's denial of those five ancillary motions did not fall within the purview of Chapter 64 and was, therefore, not reviewable on appeal under article 64.05. *See Padilla v. State*, 03-12-00301-CR, 2013 WL 3185896, at \*4 (Tex. App.—Austin June 20, 2013, pet. ref'd).

3

In the years that followed, Padilla continued to file additional pro se motions for DNA testing and other pleadings. In August 2016, Padilla filed another pro se motion for subsequent DNA testing and another request for appointed counsel under Chapter 64, which, the record indicates, the trial court denied in December 2016. No appeal was taken from that order. In November 2017, Padilla filed a *Motion to Compel Discovery of Forensic Evidence / Reports and Request for a Hearing* under the 2013 amendments to article 39.14 of the Code of Criminal Procedure, also known as the Michael Morton Act, and he attempted to appeal the "denial by operation of law" of that motion. *See Padilla v. State*, No. 03-18-00065-CR, 2018 WL 3118542, at *1 (Tex. App.—Austin June 26, 2018, no pet.) (mem. op., not designated for publication). This Court dismissed Padilla's appeal of that order for want of jurisdiction. *See id.* at *2 (concluding that "there is no statutory provision authorizing an appeal from the denial of a motion to compel discovery filed under article 39.14" and therefore this Court "ha[d] no appellate jurisdiction").[5]

In August 2018, Padilla filed another pro se motion for subsequent postconviction forensic DNA testing along with another motion requesting the appointment of counsel. In

---

[5] In addition, Padilla has filed multiple applications for writ of habeas corpus in state court, all of which have been either denied or dismissed without written order by the Court of Criminal Appeals, *see* Tex. Code Crim. Proc. art. 11.07, §§ 4, 5; *see, e.g.*, *In re Guadalupe Padilla*, No. WR-61,391-14 (denied on May 8, 2019); *In re Guadalupe Padilla*, No. WR-61,391-13 (dismissed on Sept. 13, 2017); *In re Guadalupe Padilla*, No. WR-61,391-10 (dismissed on June 7, 2017); *In re Guadalupe Padilla*, No. WR-61,391-09 (denied on July 20, 2016); *In re Guadalupe Padilla*, No. WR-61,391-08 (denied on Feb. 11, 2015); *In re Guadalupe Padilla*, No. WR-61,391-06 (dismissed on May 22, 2013); *In re Guadalupe Padilla*, No. WR-61,391-05 (dismissed on Nov. 5, 2008); *In re Guadalupe Padilla*, No. WR-61,391-03 (denied on Mar. 29, 2006); *In re Guadalupe Padilla*, No. WR-61,391-02 (denied on Aug. 17, 2005), as well as applications for writ of habeas corpus and other pleadings in federal court, *see, e.g.*, *Padilla v. Moore*, No. A-18-CA-099-RP, 2018 WL 1419344 (W.D. Tex. Mar. 22, 2018) (magistrate's report and recommendation of dismissal of Padilla's complaint under 42 U.S.C. § 1983); *Padilla v. Davis*, No. A-16-CA-975-SS, 2016 WL 7413526 (W.D. Tex. Dec. 20, 2016) (order denying Padilla's application for writ of habeas corpus).

September 2018, he filed several discovery motions in which he sought the victim's medical records, including the medical report from when the child was examined by the sexual assault nurse examiner at the hospital (the SANE report) and medical records (or hospital records) concerning an unrelated sexual assault alleged to have been perpetrated against the child by her stepfather. Padilla also filed several motions seeking a "discretionary evidentiary hearing."

When the trial court failed to immediately act on Padilla's motions for DNA testing and for the appointment of counsel, Padilla sought mandamus relief from this Court. His first petition for writ of mandamus was denied because Padilla failed to provide a sufficient mandamus record. *See In re Padilla*, No. 03-19-00100-CV, 2019 WL 988322, at *1 (Tex. App.—Austin Feb. 28, 2019, orig. proceeding). His subsequent petition for writ of mandamus was dismissed as moot because the trial court had ruled on his motions for DNA testing and for the appointment of counsel. *See In re Padilla*, 03-19-00256-CV, 2019 WL 1969518, at *1 (Tex. App.—Austin May 3, 2019, orig. proceeding).

On April 29, 2019, the trial court entered an order denying Padilla's August 2018 motion for subsequent DNA testing and his August 2018 motion requesting appointed counsel. Padilla appeals the trial court's order.

**DISCUSSION**

Padilla raises four points of error on appeal. In his first point of error, he argues that the trial court erred in denying his motion for subsequent DNA testing and his motion requesting appointed counsel. In his second point of error, he maintains that the trial court erred in failing to exercise jurisdiction over "extrajudicial proceedings" that, he contends, are related to his Chapter 64 proceeding. In his third point of error, Padilla challenges the sufficiency of the

5

evidence supporting this Court's prior determinations concerning previous DNA testing in his case. Finally, in his fourth point of error, he complains about the trial court's denial of, or failure to rule on, his discovery and hearing-request motions.

**Denial of Motions**

*Subsequent DNA Testing*

We review a trial court's decision to deny a motion for postconviction DNA testing under a bifurcated standard of review. *Reed v. State*, 541 S.W.3d 759, 768 (Tex. Crim. App. 2017); *Rivera v. State,* 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). Under this standard, we afford almost total deference to a trial court's determination of issues of historical fact and its application of the law to fact issues that turn on determinations of witnesses' credibility and demeanor, but we review de novo the trial court's application of the law to fact issues that do not turn on determinations of witnesses' credibility and demeanor. *Reed*, 541 S.W.3d at 768–69; *Holberg v. State*, 425 S.W.3d 282, 284–85 (Tex. Crim. App. 2014). However, where, as here, the trial record and affidavit of appellant are the only sources of information supporting the motion, the trial court is in no better position than we are to make its decision, and we review the issues de novo. *Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005) (because trial court did not hold live hearing on request for DNA testing, reviewing court conducted de novo review as trial court was in no better position to determine issues).

Under Chapter 64 of the Code of Criminal Procedure, "[a] convicted person may submit to the convicting court a motion for forensic DNA testing of evidence that has a reasonable likelihood of containing biological material." Tex. Code Crim. Proc. art. 64.01(a-1). Several requirements must be met in order to obtain DNA testing under Chapter 64, and the

convicting court may order forensic DNA testing only if the statutory preconditions are met. *See id.* arts. 64.01, 61.03; *see also Hall v. State*, 569 S.W.3d 646, 655 (Tex. Crim. App. 2019) (confirming that to be entitled to postconviction DNA testing, "a convicted person must satisfy the requirements of Chapter 64 of the Code of Criminal Procedure"); *cf. Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011) (summarizing statutory requirements of Chapter 64). When requesting testing for evidence that was previously subjected to DNA testing, the convicted person must show that although previously subjected to DNA testing, the evidence "can be subjected to testing with newer techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." *See* Tex. Code Crim. Proc. art. 64.01(b)(2); *Dinkins v. State*, 84 S.W.3d 639, 642 (Tex. Crim. App. 2002). To meet the burden of the Chapter 64 requirements, the convicted person must provide statements of fact in support of his claims; general, conclusory statements are insufficient. *See Routier v. State*, 273 S.W.3d 241, 255 (Tex. Crim. App. 2008); *Dinkins*, 84 S.W.3d at 642; *see also Swearingen v. State*, 303 S.W.3d 728, 732 (Tex. Crim. App. 2010) (stating that "a mere assertion or a general claim" will not satisfy Chapter 64 burden).

In his motion for subsequent DNA testing, Padilla requested that "'ALL' forensic evidence – the forensic biological evidence and the forensic documentary evidence" be included "for consideration with DNA re-calculation and re-analysis." The basis for the motion was a *Brady* notice from the Travis County District Attorney dated January 7, 2016, that informed Padilla that his case "***might possibly*** be impacted by recent scientific developments relating to DNA evidence." *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (establishing that due process requires prosecutors to disclose exculpatory, material evidence to defendant). The notice was based on a letter from the Texas Forensic Science Commission (TFSC) dated August 21, 2015,

7

which advised members of the Texas criminal-justice community of concerns about the statistical population database used to calculate DNA match statistics and that corrections had been made to the FBI allele frequency data. The letter explained that the widely accepted consensus was that the database corrections had no impact on the threshold question of whether an individual was included or excluded in any DNA test result. The letter also addressed the impact of the database corrections on DNA mixture interpretation that used a type of statistical calculation known as Combined Probability of Inclusion/Combined Probability of Exclusion (CPI/CPE).[6] Along with the *Brady* notice and TFSC letter, the State provided a letter and form from the Capital Area Private Defender Service (CAPDS) to assist Padilla in obtaining re-calculation of the DNA test results in his case if he so chose. A letter from CAPDS to Padilla, which he attached to his motion for subsequent DNA testing, indicates that he sought re-calculation of the DNA test results in his case with the assistance of CAPDS.

The State filed a response to Padilla's motion for subsequent DNA testing, arguing that Padilla did not meet his burden to establish that he was entitled to retesting under Texas law. Specifically, the State noted that the re-evaluation had already been conducted in this

---

[6] Specifically, the letter explained that empirical testing conducted to assess the statistical impact of the corrected data

> concluded that the difference between profile probabilities using the original data and the corrected data is less than a two-fold difference in a full and partial profile. Testing performed by Texas laboratories also supports the conclusion the difference is less than two-fold. For example, in an assessment performed by one Texas laboratory, the maximum factor was determined to be 1.2 fold. In other words, after recalculating cases using the amended data, the case with the *most substantially affected* Combined Probability of Inclusion/Exclusion ("CPI")[ ] statistical calculation (evaluated for a mixed sample) changed from a 1 in 260,900,000 expression of probability to a 1 in 225,300,000 expression of probability.

case, and the re-evaluation report reflected that CPI was not used for statistical analysis in this case.[7]

In its April 2019 order, the trial court found that:

1. Applicant's biological evidence has already been tested and his motion for post-conviction DNA testing fails to show that newer testing methods are available that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test.

2. Applicant has not established that a reasonable ground exists for the filing of a motion for post-conviction DNA testing.

Therefore, the court concluded that Padilla failed to satisfy the requisites for retesting under article 64.01(b) and, further, that he failed to demonstrate that he was entitled to appointed counsel under article 64.01(c). Based on these conclusions, the court denied Padilla's motions.

The record supports the trial court's fact findings and legal conclusions; it demonstrates that Padilla failed to meet the statutory requirements of Chapter 64.[8]

---

[7] Attached to its response, the State provided a copy of the CPI Evaluation Laboratory Report issued on March 23, 2017, which stated: "This case was evaluated in accordance with the Criteria for the Evaluation of DNA Mixture Interpretation document issued by the Texas Forensic Science Commission on 10/15/2015. CPI was not used for statistical analysis in this case; therefore reinterpretation may not be necessary."

[8] Initially, we note that a motion for forensic DNA testing must be accompanied by "an affidavit, sworn to by the convicted person, containing statements of fact in support of the motion." *See* Tex. Code Crim. Proc. art. 64.01(a-1); *see Dunning v. State*, 572 S.W.3d 685, 697 (Tex. Crim. App. 2019) (explaining that defendant "must include an affidavit" when filing motion to obtain DNA testing). Although Padilla's motion is not accompanied by the required affidavit, it contains an "unsworn declaration" in which Padilla swears "under penalty of perjury" that the facts contained in the motion are "true and correct." This Court has previously held that similar verification was sufficient to satisfy the affidavit requirement. *See In re Fain*, 83 S.W.3d 885, 889 n.4 (Tex. App.—Austin 2002, no pet.); *see also* Tex. Civ. Prac. & Rem. Code § 132.001(a) (allowing "unsworn declaration" to be used in lieu of affidavit). Although Padilla's declaration does not include his date of birth, we conclude that it nevertheless substantially complies with the statutorily prescribed declaration form. *See* Tex. Civ. Prac. & Rem. Code § 132.001(e) (setting out prescribed declaration form for inmate); *see also Bahm*

9

First, Padilla failed to identify what evidence should be retested. In his motion, when discussing the history of his case, Padilla described all of the previously tested evidence—what was tested initially before trial and what was later tested in the Chapter 64 proceeding—but he failed to specify any particular item of evidence containing biological material that should be subjected to further DNA testing. *See Jones v. State*, 161 S.W.3d 685, 688 (Tex. App.—Fort Worth 2005, pet. ref'd) ("To meet the requirements of article 64.01, an appellant must clearly state, at a minimum, what evidence he wants tested." (citing *Dinkins*, 84 S.W.3d at 642)). Rather, Padilla simply requested that "'ALL' forensic evidence – the forensic biological evidence and the forensic documentary evidence" be included "for consideration with DNA re-calculation and re-analysis."

Further, Padilla's overbroad request for "all" evidence to be retested included evidence that, contrary to Padilla's contention, is not within the purview of Chapter 64. "Article 64.01 requires that the item sought to be tested 'contain[ ] biological material.'" *Holberg*, 425 S.W.3d at 285 (citing Tex. Code Crim. Proc. art. 64.01(a–1)). For purposes of the statute, "biological material":

(1)     means an item that is in possession of the state and that contains blood, semen, hair, saliva, skin tissue or cells, fingernail scrapings, bone, bodily fluids, or other identifiable biological evidence that may be suitable for forensic DNA testing; and

(2)     includes the contents of a sexual assault evidence collection kit.

---

*v. State*, 219 S.W.3d 391, 393 (Tex. Crim. App. 2007) (explaining that requirements of "unsworn declaration" "are simply that the unsworn declaration must be (1) written and (2) 'subscribed by the person making the declaration as true under penalty of perjury'" and clarifying that only substantial compliance with prescribed form in statute is necessary).

10

Tex. Code Crim. Proc. art. 64.01(a). Padilla's request for the testing of "forensic documentary evidence," such as the SANE report or hospital records, does not meet this definition. While "biological material" includes the *contents* of a sexual assault evidence kit, it does not include a report detailing the collection of that evidence or records describing the exam during which the evidence was collected—that is, documents *about* the contents of a sexual assault kit.

In addition, Padilla did not explain whether the evidence sought to be retested still exists and is in a condition capable of being tested. *See id.* art. 64.03 (a)(1)(A) (requiring convicted person to establish that evidence still exists and is in condition making DNA testing possible and that evidence has been subjected to sufficient chain of custody to establish its integrity).

Moreover, Padilla provided no evidence, description, or explanation of "new testing techniques" that would provide a likelihood of a more accurate and probative result than the previous testing that has already been done in this case. *See id.* art. 64.01(b)(2); *see, e.g.*, *Routier*, 273 S.W.3d at 251 (holding that convicted person's motion satisfied article 64.01(b)(2) by including affidavit from expert who stated that current "clean up" procedures were better than prior techniques and would make it more likely that retesting would yield result when prior testing did not). In his motion, Padilla did not identify what new testing techniques could be used that were not available when the tests were originally performed. Instead, Padilla appeared to rely on the Texas Forensic Science Commission's letter indicating that there was the *potential* for error in testing results and seemed to suggest that the "re-calculation and re-analysis" is the "new testing technique" that would yield more accurate and probative testing results in his case.

However, the record reflects that such "re-analysis" has already been conducted in his case. The CPI Evaluation Laboratory Report in the record, issued in March 2017, reflects

11

that the evidence in this case was evaluated in accordance with the Texas Forensic Science Commission's new DNA mixture interpretation protocol and showed that CPI was *not* used for statistical analysis in this case.[9] Padilla's suggestion that the "re-calculation and re-analysis" would yield a more accurate and probative result than previous testing ignores the fact that, because CPI/CPE calculation was not used in this case, there is no "re-calculation" to be made.[10]

Because Padilla failed to carry his burden to establish his entitlement to subsequent DNA testing under article 64.01(b)(2) for the evidence that was previously tested, the trial court did not abuse its discretion in denying Padilla's most recent motion seeking further

---

[9] Padilla implies that the lab report, attached to the State's Response, is not properly part of the record. However, he cites to no authority stating that, in a Chapter 64 proceeding, the trial court is precluded from considering exhibits attached to the State's response, and we find none. *See, e.g.*, *Ex parte Gutierrez*, 337 S.W.3d 883, 893 (Tex. Crim. App. 2011) (observing that legislature "placed no barriers to the type of relevant and reliable information that the trial judge may consider when determining if identity was or is an issue in the case" and concluding that witness statements attached to State's brief submitted to trial judge were part of record and properly considered by court); *Mearis v. State*, 120 S.W.3d 20, 24 (Tex. App.—San Antonio 2003, pet. ref'd) (concluding that trial court did not err in considering affidavits submitted by State in opposition to motion for forensic DNA testing because, based on language of Chapter 64, in deciding whether evidence to be tested still exists, trial court could reach that decision based on sufficiency of State's written explanation in State's response and affidavits attached as exhibits).

Furthermore, in his motion, Padilla asked the trial court to take judicial notice "of the entire contents of the District Clerk's file on record" and "the record developed during Chapter 64 TX.C.Cr.P [sic] proceedings, and significantly of all current and ongoing proceedings involving the 're-calculation and re-analysis' of the DNA test results obtained under Chapter 64."

[10] Padilla contends that the CPI Evaluation Lab Report is not "conclusive." However, the letter from the Texas Forensic Science Commission stated: "We therefore recommend any prosecutor, defendant or defense attorney with a currently pending case involving a DNA mixture in which the results could impact the conviction consider requesting confirmation that CPI was calculated by the laboratory using current and proper mixture interpretation protocols. If the laboratory is unable to confirm the use of currently accepted protocols for the results provided, counsel should consider requesting a re-analysis of CPI." The evaluation here, which demonstrated that CPI was not used in the statistical analysis of the DNA testing in Padilla's case, addressed the potential concerns with the DNA mixture interpretation protocol and the impact of the database correction on the expression of profile probability in this case.

12

DNA testing of the evidence in this case. *See Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002) (recognizing that "a court must order testing only if the statutory preconditions are met").

*Appointment of Counsel*

An indigent convicted person intending to file a motion for postconviction forensic DNA testing has a limited right to appointed counsel. *Gutierrez*, 337 S.W.3d at 889; *see* Tex. Code Crim. Proc. art. 64.01(c) (stating requirements for appointment of counsel). Appointment of counsel in a Chapter 64 proceeding is determined by three criteria: (1) the defendant must inform the convicting court that he wishes to submit a motion for DNA testing; (2) the convicting court must find that "reasonable grounds" exist for filing a DNA motion; and (3) the convicting court must find that the movant is indigent. *Gutierrez v. State*, 307 S.W.3d 318, 321 (Tex. Crim. App. 2010).

Though a convicted person need not prove entitlement to DNA testing as a precondition for obtaining appointed counsel, whether "reasonable grounds" exist for testing necessarily turns on what is required for testing. *Gutierrez*, 337 S.W.3d at 891; *see Lewis v. State*, 191 S.W.3d 225, 227–28 (Tex. App.—San Antonio 2005, pet. ref'd) (statute requires only showing of "reasonable grounds" for motion to be filed, not establishment of "prima facie" case). Entitlement to appointed counsel is conditioned on the trial judge's finding that reasonable grounds exist for the filing of a motion for postconviction DNA testing.

As discussed above, we have already concluded—as the trial court did—that Padilla failed to satisfy the statutory requirements of article 64.01(b) for subsequent DNA testing. Thus, as the trial court found, Padilla did not establish "reasonable grounds" to file a motion for subsequent DNA testing. *See Lewis*, 191 S.W.3d at 228–29 ("If a convicted person

13

who bears the burden of satisfying the requirements of Chapter 64 fails to meet the preconditions to obtaining post-conviction DNA testing, he has failed to set forth reasonable grounds to file a motion and, therefore, is not entitled to the appointment of counsel."). Therefore, we conclude—as the trial court did—that Padilla failed to satisfy the statutory requirements of article 64.01(c) for the appointment of counsel. Consequently, we conclude that the trial court's decision to deny Padilla's most recent request for appointed counsel was not error. *See Weems v. State*, 550 S.W.3d 776, 781 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (determining that trial court did not err by denying request for appointment of counsel under Chapter 64 when convicted person "failed to demonstrate" that "the statutory preconditions to obtaining DNA testing" were met); *In re Ludwig*, 162 S.W.3d 454, 455 (Tex. App.—Waco 2005, no pet.) (stating that even if convicting court determines that convicted person is indigent, court is not required to appoint counsel if it found there were no reasonable grounds for motion for forensic DNA testing to be filed).

In sum, we conclude that Padilla did not satisfy the statutory requirements of article 64.01(b) for subsequent postconviction forensic DNA testing or the statutory requirements of article 64.01(c) for the appointment of counsel. Thus, we conclude that the trial court did not abuse its discretion in denying Padilla's August 2018 motion for subsequent DNA testing or his August 2018 motion requesting the appointment of counsel. We overrule Padilla's first point of error.

## "Extrajudicial" Jurisdiction

In his motion seeking subsequent DNA testing, Padilla "requested" the trial court's jurisdiction over "collateral proceedings" involving: (1) the Travis County District

14

Attorney's Office, concerning the *Brady* notice provided to Padilla; (2) the Capitol Area Private Defender Service (CAPDS), later named "The Forensic Project"; (3) the Texas Forensic Science Commission; and (4) the Texas Department of Public Safety Crime Lab "related to the 're-calculation and re-analysis' of DNA testing" under Chapter 64. In his second point of error, Padilla contends that the trial court "committed reversible error" by "not taking" jurisdiction over "extrajudicial proceedings involving the re-testing and re-analysis of previous test results" to review a potential conflict of interest involving these entities.

A trial court cannot assume jurisdiction upon request. In a criminal case, once general jurisdiction has expired, a trial court can act only if, and to the extent, that it is authorized to do so by a specific statutory source. *Skinner v. State*, 305 S.W.3d 593, 594 (Tex. Crim. App. 2010); *see Skinner v. State*, 484 S.W.3d 434, 437 (Tex. Crim. App. 2016) (explaining that once general jurisdiction of trial court is exhausted, court "has only limited jurisdiction . . . to perform functions specified by law"); *State v. Patrick*, 86 S.W.3d 592, 595 (Tex. Crim. App. 2002) ("Without jurisdiction, the trial court has no power to act. Consequently, a source of jurisdiction must be found to authorize the trial court's orders.").

"[I]n enacting Chapter 64, the Legislature provided a source of limited jurisdiction for a [trial] court to entertain a movant's request for postconviction DNA testing and a framework for trial courts to conduct those proceedings." *Skinner*, 484 S.W.3d at 437; *State v. Holloway*, 360 S.W.3d 480, 487 (Tex. Crim. App. 2012), *abrogated on other grounds by Whitfield v. State*, 430 S.W.3d 405 (Tex. Crim. App. 2014) (recognizing that Chapter 64 re-confers limited subject-matter jurisdiction in convicting court). Chapter 64 provides no authority for the trial court to exercise jurisdiction over individuals or entities related to claims of an alleged conflict of interest. *See* Tex. Code Crim. Proc. arts. 64.01–.04; *cf. Holloway*, 360 S.W.3d

15

at 488 ("The jurisdictional purpose of Chapter 64 is simply to provide deserving applicants with a mechanism for post-conviction DNA testing and a favorable finding on the record if justified by that testing; *it does not include any other remedy or form of relief in the convicting court*." (emphasis added)). The Court of Criminal Appeals has explained,

> *Patrick* and its progeny further contradict the notion that a court can be required by constitutional principles to consider claims under a remedial statute that are not authorized by the language of that statute. Quite the opposite: if the statute is what creates the remedy, and the claim at issue does not qualify under the statute, then the court is prohibited from granting relief under the statute.

*Ex parte White*, 506 S.W.3d 39, 51 (Tex. Crim. App. 2016). Thus, the trial court cannot exercise its limited jurisdiction under Chapter 64 to consider Padilla's conflict-of-interest claim or grant Padilla any relief on the basis of such a claim. *See, e.g.*, *Holloway*, 360 S.W.3d at 487 (concluding that permitting trial court to take extra-statutory action of granting new trial would conflict with plainly expressed jurisdictional purpose of DNA statute).

On appeal, Padilla describes this issue as "a subsidiary issue" directed to this Court, in which he asks us "to consider a 'potential' conflict" among the state officials who were involved in the trial of his case who are, according to Padilla, involved, in an oversight capacity, with the DNA testing "re-calculation" process. However, in an appeal from the trial court's denial of a request for DNA testing, we may not consider any claims that fall outside the scope of Chapter 64. *In re Garcia*, 363 S.W.3d 819, 822 (Tex. App.—Austin 2012, no pet.); *see Nelson v. State*, No. 03-12-00187-CR, 2014 WL 902497, at *1 (Tex. App.—Austin Mar. 5, 2014, no pet.) (mem. op., not designated for publication); *Padilla*, 2013 WL 3185896, at *4; *see also Reger v. State*, 222 S.W.3d 510, 514 (Tex. App.—Fort Worth 2007, pet. ref'd) (concluding that,

16

because trial court was without jurisdiction to consider contentions under DNA statute, issues fell outside scope of appellate review under article 64.05).

We overrule Padilla's second point of error.

**Sufficiency Challenge**

In his third point of error, Padilla challenges the sufficiency of the evidence "to support the legal and factual determinations made by [this Court in our 2013 opinion] relating to previous chapter 64 DNA test results."

As an initial matter, we note that the proper vehicle for challenging a prior decision of this Court is a petition for discretionary review in the Court of Criminal Appeals. *See* Tex. R. App. P. 68.1 ("On petition by any party, the Court of Criminal Appeals may review a court of appeals' decision in a criminal case."); 43B George E. Dix & John M. Schmolesky, *Texas Practice Series: Criminal Practice and Procedure* § 57:1 (3d ed.) (noting that either party to criminal case decided by court of appeals has statutory right to seek review by Court of Criminal Appeals and explaining that vehicle for pursuing such review is petition for discretionary review or "PDR"); Tex. Code Crim. Proc. art. 44.45(b)(1) ("The state or a defendant in a case may petition the Court of Criminal Appeals for review of the decision of a court of appeals in that case."). Padilla sought discretionary review of this Court's 2013 decision, which he now claims was not supported by the trial record or the record "on Chapter 64," and such review was refused by the Court of Criminal Appeals. *See* Tex. R. App. P. 69.1; *see also* Website of Court of Criminal Appeals, http://search.txcourts.gov/Case.aspx?cn=PD-1168-13&coa=coscca.

Furthermore, Padilla relies on *Whitfield v. State*, 430 S.W.3d 405 (Tex. Crim. App. 2014), to support his contention that "courts of appeal have been given the authority to consider the sufficiency of evidence as well as other grounds on appeal" in a Chapter 64 proceeding. However, *Whitfield* addressed the issue of whether a convicted person could appeal the trial court's unfavorable finding under article 64.04. *See id.* 407–09; *see also* Tex. Code Crim. Proc. art. 64.04 (providing that, after examining DNA testing results, convicting court shall "make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted"). Abrogating a prior decision, the Court of Criminal Appeals held that an appeal under Chapter 64 extends to the sufficiency of the evidence to support an article 64.04 finding.[11] *Whitfield*, 430 S.W.3d at 409. The trial court here made no finding under article 64.04.

Moreover, while the court in *Whitfield* stated that "the courts of appeals have been given authority to consider the sufficiency of the evidence as well as other grounds of appeal," the court was construing article 64.05, the statute governing DNA-testing appeals. *Id.* That statute explicitly provides for appeals "under this chapter," meaning Chapter 64. *See* Tex. Code Crim. Proc. art. 64.05. The evidentiary sufficiency review that *Whitfield* authorizes is the sufficiency of the evidence supporting a finding made pursuant to article 64.04, which is an appeal "under this chapter." We do not construe *Whitfield* as expanding article 64.05 to

---

[11] In *State v. Holloway*, 360 S.W.3d 480 (Tex. Crim. App. 2012), *abrogated on other grounds by Whitfield v. State*, 430 S.W.3d 405 (Tex. Crim. App. 2014), the Court of Criminal Appeals held that the court of appeals erred by addressing a State's appeal of the trial court's finding favorable to a convicted person because any opinion on the merits of the finding related to the DNA testing would result in an advisory-only opinion. 360 S.W.3d at 490. In *Whitfield*, the court overruled *Holloway* in light of its conclusion that the legislative intent was to grant the courts of appeals the authority to review a trial court's findings under the DNA statute. 430 S.W.3d at 410.

authorize a general sufficiency review or an appeal of any issue beyond the scope of Chapter 64, such as Padilla's evidentiary-sufficiency challenge here, which is, at its core, a challenge to the sufficiency of the evidence supporting his convictions. *See Garcia*, 363 S.W.3d at 822 ("[C]hapter 64 is not an invitation to review every potential error in the underlying trial proceedings; instead, it is simply a procedural vehicle for obtaining evidence 'which might then be used in a state or federal habeas proceeding.' Accordingly, chapter 64 does not confer jurisdiction on an appellate court . . . to review, under the guise of a DNA testing appeal, anything beyond the scope of those articles." (internal citations omitted)).

We overrule Padilla's third point of error.

## Other Motions

In his fourth point of error, Padilla argues that the trial court erred by denying, or not ruling on, other motions filed in connection with his most recent motion for subsequent DNA testing. Specifically, Padilla filed motions for discovery of the victim's medical records and motions for a "discretionary evidentiary hearing."

This Court has previously construed the Chapter 64 statutory scheme as permitting only appeals from an order denying testing or an order related to testing results (an article 64.04 finding) and has concluded that we lack jurisdiction to review anything outside the purview of the Chapter 64 articles. *Padilla*, 2013 WL 3185896, at *3–4; *Garcia*, 363 S.W.3d 822; *Padilla*, 2010 WL 5019166, at *1–2; *see, e.g.*, *Martin v. State*, No. 03-11-00839-CR, 2014 WL 295036, at *3 (Tex. App.—Austin Jan. 23, 2014, no pet.) (mem. op., not designated for publication) (concluding that denial of request for appointed counsel to assist in having DNA test results compared to statewide DNA database did fall within purview of Chapter

19

64 and was not reviewable on appeal); *see also* Tex. Crim. Proc. Code art. 64.05 (authorizing appeal "under this chapter"). Several of our sister courts of appeals have also concluded that Chapter 64 does not confer jurisdiction on appellate courts to review anything beyond the scope of the Chapter 64 articles. *See Weems*, 550 S.W.3d at 781; *Reger*, 222 S.W.3d at 514; *Lopez v. State*, 114 S.W.3d 711, 714 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.); *see also Diaz v. State*, No. 02-17-00003-CR, 2018 WL 359958, at *2 (Tex. App.—Fort Worth Jan. 11, 2018, no pet.) (mem. op., not designated for publication); *Dukes v. State*, No. 04-12-00404-CR, 2013 WL 1760618, at *2 (Tex. App.—San Antonio Apr. 24, 2013, no pet.) (mem. op., not designated for publication); *Conlin v. State*, No. 09-07-344 CR, 2007 WL 5101236, at *5 (Tex. App.—Beaumont Apr. 16, 2008, no pet.) (mem. op., not designated for publication).

The trial court's denial of discovery motions, which are not authorized under Chapter 64, or the failure to rule on such motions, does not fall within the purview of Chapter 64 and is, therefore, not reviewable on appeal under article 64.05. *Cf. Wolfe v. State*, 120 S.W.3d 368, 371 (Tex. Crim. App. 2003) (dismissing appeal because 2003 version of article 64.05 did not authorize review of trial court's denial of appellant's request to appoint DNA expert).

As for Padilla's complaint concerning a "discretionary evidentiary hearing"—the trial court's denial of his motions requesting such a hearing, the court's failure to rule on the motions seeking such a hearing, or the court's failure to conduct such a hearing—the statutory requirement for a hearing in a Chapter 64 proceeding appears in article 64.04, which applies after the DNA testing has been ordered and conducted. That statute provides:

> After examining the results of testing under Article 64.03 and any comparison of a DNA profile under Article 64.035, the convicting court shall hold a hearing and make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted.

20

Tex. Code Crim. Proc. art. 64.04. The trial court here did not order subsequent DNA testing and no subsequent DNA testing was conducted; thus, no hearing was required since there was no article 64.04 finding for the trial court to make. The trial court did not err in failing to conduct a hearing pursuant to article 64.04.

To the extent that Padilla sought an evidentiary hearing related to his discovery motions—that is, sought a hearing to compel discovery—such a hearing is not authorized under Chapter 64. *See id.* Thus, the denial of Padilla's motions requesting such a hearing, the failure to rule on the motions requesting such a hearing, or the failure to conduct such a hearing, fall outside the purview of Chapter 64 and, like his complaints relating to the discovery motions themselves, are not reviewable on appeal under article 64.05. *Cf. Wolfe*, 120 S.W.3d at 371.

We overrule Padilla's fourth point of error.

## CONCLUSION

We affirm the trial court's order denying Padilla's August 2018 motion for subsequent postconviction forensic DNA testing and August 2018 motion requesting the appointment of counsel.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed: January 14, 2021

Do Not Publish